## A. J. ANDERSON ELECTRIC COMPANY v. CLEBURNE WATER, ICE AND LIGHTING COMPANY.

### Decided February 17, 1900.

**1. Charge of Court—Explaining "Substantial Compliance."**

It is not error for the court to refuse a special charge defining the words "substantial compliance," as occurring in a contract sued on, since the jury could not misunderstand their meaning.

**2. Measure of Damages—Breach of Contract.**

The measure of damages for failure to furnish and deliver an electric light plant as contracted for, in a case where there has been no delivery and acceptance of the incomplete plant, is the difference between the value of the plant, as contracted for, and the contract price.

**3. Charge of Court—Weight of Evidence—Disclaimer.**

A charge instructing that the defendant had disclaimed any title to, or interest in, or right to the possession of, the electric plant, for the contract price of which the suit was brought, and that the plaintiff was entitled to recover the title and possession of the same from the defendant, with a proviso, however, that if the jury should find that the plaintiff had complied with his contract as to the erection and construction of the plant, then it would not be necessary for them to return a verdict on this subject at all,—was not on the weight of evidence, nor calculated to mislead and prejudice the jury.

**4. Same—Additional Agreement.**

It was not error for the charge to submit to the jury the issue as to whether or not the parties, after the expiration of the time in which the electric plant was to have been completed, entered into a further contract providing that plaintiff was to test and operate the plant for thirty days, this contract having been specially pleaded by the defendant, and there being evidence to show that it was made.

**5. Contract—Substantial Compliance—Erection of Electric Plant for Street Lighting.**

It was correct for the court to charge that if plaintiff had fairly and substantially completed his contract for the erection of the electric light plant, and the material furnished was all of the character and quality contracted for, but had failed to wire in certain arc and incandescent lights as claimed by defendant, plaintiff would, in such event, be entitled to recover the contract price sued for, less such diminution in the value of said plant as was represented by the part so unfinished, and also that defendant would be entitled to recover such loss by reason of plaintiffs' noncompliance with his contract as grew out of and arose from such failure as was fairly and reasonably within the contemplation of the parties at the time the contract was made.

**6.  Opinion Evidence.**

Where a witness had stated in detail all the facts in his knowledge relating to an electric light plant, his further statement that plaintiff had furnished the plant substantially as contracted for, and that after its erection witness had operated it and found it in satisfactory condition, was properly excluded as matter of opinion.

**7.  Damages for Breach of Contract.**

Where plaintiff sued for the contract price of an electric light plant which defendant refused to accept, and was denied any recovery on the ground that he had failed to substantially comply with his contract, the possession of the plant being awarded to him by the verdict, and there was evidence by two witnesses to the effect that had the plant been completed according to contract its value would have been from $2000 to $3500 greater than the contract price, a verdict for $500 damages in favor of defendant was warranted.

APPEAL from Johnson.   Tried below before Hon. W. C. WEAR, Special Judge.

*F. M. Brantley* and *Davis & McCoy,* for appellant.

*H. P. Brown* and *Ramsey & Odell,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was originally begun in the District Court of Johnson County on November 9, 1893, by appellant, A. J. Anderson Electric Company, to recover of appellee, the Cleburne Water, Ice and Lighting Company, the sum of $8000, the agreed purchase price of an electric light plant alleged to have been by appellant furnished, sold, set up, and delivered to appellee, under a contract therefor entered into by and between the parties on or about the 17th day of May, 1893, and also for the foreclosure of a mortgage and vendor's lien on the plant, reserved to secure the payment of the purchase price.

A trial of the cause resulting in a verdict and judgment adversely to appellant, on appeal of the cause to this court, the judgment of the lower court was reversed and the cause remanded to the lower court for a new trial.  27 S. W. Rep., 595.

After this decision each party amended its pleadings.  The pleadings upon which the parties subsequently went to trial were in substance as follows:  The appellant, A. J. Anderson, suing in his firm name of A. J. Anderson Electric Company, in his amended petition, filed December 21, 1894, set out the contract entered into by and between the parties for the furnishing, sale, delivery, and erection by plaintiff for defendant of the electric plant in controversy at Cleburne, Texas, and the agreement of defendant to pay the agreed price for the same, a copy of the contract being attached and made an exhibit to  the petition, with the additional qualifying averment that the true agreed contract price was $8000, and that the additional sum of $7500, recited in the contract as having been already paid, was not in fact paid or to be paid, but the recitation thereof was by consent inserted in the contract at the request of defendant; also, that shortly after the signing of the contract, plaintiff, at the special instance and solicitation of defendant, consented

that an Ideal engine should be furnished to defendant instead of the McEwen engine recited in the written contract, and at the same price.

Plaintiff averred compliance on his part with the contract; that he furnished and erected the plant on the premises of defendant, in the manner and at the places designated and pointed out by defendant, and had the same put up and complete and in satisfactory running order and in operation as agreed, and within the time stipulated, save and except the putting in place of nine of the ward arc lamps, due to the delay of the manufacturers in completing and forwarding them. That this omission was only a minor detail, and in no way interfered with the operation or running of the balance of the plant. That plaintiff then offered to have the plant subjected to the inspection and approval of the electrician of the Texas Survey and Rating Bureau (the party mentioned in the contract), and solicited that defendant make him a payment of the first installment of $2000, offering to waive the execution or delivery of the installment notes for the balance until the arc lamps were furnished and set up. That the defendant rejected each of these offers, at the same time notifying plaintiff that it was able, ready, and willing to pay the agreed price for the plant as soon as the delayed arc lamps were furnished and put up. That a few days thereafter plaintiff received and furnished and put up the arc lamps as agreed, and then notified defendant of the fact, and offered to have defendant furnished with a duplicate of the written guarantee mentioned, and also to have the plant promptly subjected to the inspection and approval of the electrician of the Texas Survey and Rating Bureau, all which offers the defendant rejected, and notified plaintiff that it would not accept the plant or pay any part of the purchase price. That plaintiff then promptly thereafter sought out said electrician and solicited that he make the inspection of the plant as mentioned in the contract, at the same time offering to pay him his charges for the work and services, but that the electrician refused to so act or make the inspection. That plaintiff then again tendered the plant to defendant and requested of defendant the payment of the $2000, the cash payment and the execution and delivery of the purchase money notes, as stipulated for the remainder of the purchase price, both of which defendant wrongfully and without any just reason refused to do.

Plaintiff further averred that by the terms of the contract he was entitled to a mortgage and vendor's lien on said plant to secure the payment of said purchase price, and prayed for judgment for his said debt and damages, with 8 per cent interest thereon, and for a foreclosure of his said lien.

The appellee filed its second amended original answer on May 9, 1895, which consists of a general demurrer, general denial, and a special plea in substance to the effect that on the 17th day of May, 1893, it entered into a contract with the appellant for the construction and erection by him of an electric light plant, substantially as stated by the appellant in this petition. That the true consideration of the order was $8000,

of which the sum of $2000 was to be paid when such electric light plant was in satisfactory running order and the same completed. That by the terms of its said contract with appellant it was expressly agreed that appellant should have said electric light plant in operation within thirty days from the date of the arrival of the boiler, engines, and electrical machinery, and that the said machinery should be in Cleburne not later that ninety days from the date of its said contract. Or, in other words, that the said electric light plant should be by appellant in all respects completed, in operation, and in satisfactory running order not later than September 17, 1893, and that this contract as to the date and time of operation of said electric light plant was an essential and material part of the said contract, and that said contract was entered into between the appellant and appellee with reference to this date, and that appellee would not have made said contract unless and except for the fact that the appellant then agreed that said electric light plant should be in operation and satisfactory running order on said September 17, 1893. For that contracts for electric lighting are usually and customarily made in the months of September to March, and lights are mostly used during said months, and that in the said months of the year such lights in mercantile and other houses are a large source of revenue from such plant, and in other months of the year are used to a much smaller extent.

Appellee further averred that all of the material, workmanship, finish, efficiency, and durability of the said plant were under said contract and the warranties therein contained agreed to be in every respect first class, by which appellee avers that the workmanship, material, finish, efficiency, and durability of the same were to be of the highest grade and order for such work and material, and that before said plant should be accepted by appellee the same should be subjected to an inspection and the approval of the electrician of the Texas Survey and Rating Bureau. That if said plant contracted for had been constructed and finished in strict compliance with the terms and stipulations of the said contract the same would have been worth the sum of $12,000, but appellee averred that said plant in whole and in part was defective and materially inferior as to workmanship, poorly constructed, and not such an electric light plant as contracted to be furnished to it, and was not, when completed, worth exceeding the sum of $5000. That the wires of the same were and are of inferior material and insufficient to convey and carry the necessary force of electric current to generate and produce good and sufficient lights. That the engine contracted to be furnished by the appellant is not of the proper horse power, but much less in power than the one contracted to be furnished. That the appellant did not furnish and put up for it a 1200 National alternator, but one of much less capacity, that the appellant has wholly failed and refused to furnish the necessary exciter sufficient to generate fifteen horse power in excess of the amount necessary to excite the alternator. That the switch board station is not such as was contracted to be furnished, but unsafe and dangerous; is smaller in size and insufficient in capacity to be safely

used in and about the operation of said electric light plant, and wholly valueless, and is not such a switch board as could be used at all.

It was further averred that the copies or originals of guarantees attached to said contract have never been furnished to it. Appellee further averred that the lights contracted to be furnished by appellant are poor and inferior and wholly valueless to the appellee; that the arc lights contracted for and which appellant agreed to furnish are used for street lighting, and such was the intent and purpose and understanding of the parties. That by the use of the said term in said contract and, appellee avers, by arc lights, as the trade understands that term, (with reference to which said understanding this contract was made) it is understood that said lights are of sufficient power to give light to enable one to read print 100 yards from such light, and to light up the street so as to furnish sufficient light for walking for the space of 300 yards square, and that such was the understanding and contract between it and appellant, and that the arc lights tendered had not one-third of this capacity, and that they were totally useless and valueless to appellee.

Appellee then averred in detail a failure of appellant to wire in the number of lights contracted for, the cost of completing said work and the damages arising from such failure, together with the loss of profits to it arising from such failure, which it is deemed unnecessary to state here in view of the verdict of the jury, to which particular attention will be hereafter called. Appellee also set out in detail an agreement made with one F. M. Henshaw, the manager of appellant, who was averred to have the authority to bind him; who agreed and contracted with appellee, in consideration of appellee's waiver of any claim of right to forfeit said contract with appellee, that appellant would start up said plant and run and test same for thirty days, the breach of which contract is distinctly averred.

Appellee further pleaded in detail its damages arising from the plaintiff's failure to perform the contract, and the abrogation of the contract between defendant and city of Cleburne. It further alleged that by the terms "satisfactory running order," as used in the contract, is meant, and such was the understanding of the parties when the contract was executed, that said plant would furnish good and sufficient lights, such as the appellee could receive and get pay from its customers for, etc. It further distinctly alleged the failure on the part of plaintiff to secure the approval of the electrician of the Texas Survey and Rating Bureau, and alleged a conspiracy upon the part of plaintiff and another person named in the pleading, who was not the electrician of said Texas Survey and Rating Bureau, to have an examination made by such person and palm the same off on appellee as the report of said electrician.

A second trial resulted in a judgment for defendant, and on a second appeal this court again reversed and remanded the case. 44 S. W. Rep., 930. The case was again tried on December 17, 1898, the jury returning a verdict as follows: "We the jury find that plaintiff is not entitled to

recover of defendant on the contract, and we find damages for defendant against plaintiff in the sum of $500. We further find for the plaintiff upon the disclaimer of the defendant the title and possession of the electric light plant in controversy. According to instructions in the charge we make reference to paragraphs 6 and 8 of same."

Upon this verdict a judgment was rendered from which an appeal has been duly prosecuted by plaintiff to this court.

*Findings of Fact.*—On the 17th day of May, 1893, A. J. Anderson, under the name of A. J. Anderson Electric Company, and the Cleburne Water, Ice, and Lighting Company, entered into the following contract:

"A. J. ANDERSON ELECTRIC CO.,
"FORT WORTH, TEXAS, May 16, 1893.

"Cleburne Water, Ice, and Lighting Company, Cleburne, Texas:

"Gentlemen.—The A. J. Anderson Electric Company, of Fort Worth, Texas, propose to furnish, put up complete, in satisfactory running order, the following electric light plant, to wit:

"Two 60-h. p. horizontal, stationary, tubular boilers.

"One 120-h. p. McEwen improved single valve, automatic cut-off engine.

"One 1200-light National Alternator, with separate excitor of sufficient capacity to generate 15-h. p. in excess of the amount necessary to excite the alternator.

"Six hundred 16-c. p. lamps, capacity in transformers of from 5 to 100 lights each, and averaging in size 30 16-c. p. lights each.

"One polish wood switch board with station apparatus, consisting of circuit changing switch, station transformer, main line and secondary fuses, potential indicator, volt meter, ampere meter, pilot light, high and low potential lights.

"One boiler feed pump.

"Twenty yard alternating current arc lights.

"One incandescent circuit on North Caddo Street, from the square north to the end of street.

"One incandescent circuit from end of North Caddo Street to Anglin Street, thence north on Anglin Street to Mayor Boyd's residence.

"One incandescent circuit from end of North Caddo Street to Main Street, thence north on Main Street to Mr. McFarland's residence.

"One incandescent circuit from power station to stand pipe in West Cleburne.

"One incandescent circuit from public square south on Caddo Street one-half mile.

"One incandescent circuit from public square east on Chambers Street to railroad tracks.

"One incandescent circuit from power station to public square. connecting all circuits with power station.

"One power circuit from power station, one-half mile or less, on incandescent pole lines.

"All poles on public square and on Chambers Street east to depot to be 30 feet 5 in. tops; all other poles to be 25 feet 5 in. tops. All poles to be Michigan cedar poles.

"Six hundred 16-c. p. incandescent lamps wired in complete.

"One double endless leather belt for alternator.

"One single endless leather belt for excitor.

"For the sum and price of fifteen thousand five hundred ($15,500) dollars.

"Payable as follows:

"Seven thousand five hundred ($7500) dollars in cash, the receipt of which is hereby acknowledged.

"Two thousand ($2000) dollars in cash when the plant is in satisfactory running order.

"Balance payable in notes as follows:

"One thousand ($1000) dollars in sixty days from date.

"One thousand ($1000) dollars in five months from date.

"One thousand ($1000) dollars in eight months from date.

"One thousand five hundred ($1500) dollars in ten months from date.

"One thousand five hundred ($1500) dollars in twelve months from date.

"All deferred payments to bear interest from date at the rate of 8 per cent per annum until paid.

"We agree to furnish you with duplicates of the guarantees hereto attached, properly signed by the manufacturers of the apparatus, namely, the National Electrical Manufacturing Company, of Eau Clair, Wis., and the J. H. McEwen Manufacturing Company, of Ridgeway, Pa.

"We further agree to subject the plant to the inspection and approval of the electrician of the Texas Survey and Rating Bureau, said services to be paid for by us.

"We further agree to have the plant in operation within thirty days from the date of the arrival of the boilers, engine, and electrical machinery, said machinery to be in Cleburne, Texas, not later than ninety days from the date of this contract.

"The acceptance by you of this proposition within five days from this date, and the approval of the same by the manager of this company, shall constitute a contract between yourselves and this company.

"It is expressly understood and agreed that the title and right of possession of, in, and to all of the machinery, apparatus, supplies, and property furnished under this proposal, or as additional thereto, shall be and remain in the A. J. Anderson Electrical Company of Fort Worth, Texas, until fully paid for in cash.

"This instrument contains the whole proposal of this company, as

finally fixed, and all other statements and representations, if any, made, and no changes or modifications of this agreement after its acceptance and approval can be made, except by the manager of this company in writing.   Respectfully,

"A. J. ANDERSON ELECTRIC CO.,

"By F. M. Henshaw, Manager.

"Accepted May 17, 1893.

"CLEBURNE WATER, ICE, AND LIGHTING CO.,

"S. W. Lovelady, President.

"Witnesses:   L. W. Chase, V. Gray.

"Approval:   F. M. Henshaw, Manager."

At the time of making the contract the defendant, through its secretary and manager, pointed out to plaintiff's manager, F. M. Henshaw, the building in which defendant desired to have the machinery erected, designating in what portion of the building defendant desired to place the boilers, etc., of the machinery.   The building was the property of defendant, and known as its power station and used as its pumping station for its waterworks plant, and was about a story and a half in height, the first story of brick and the upper half story of frame, and being about forty feet in width and about seventy in length, extending east and west and being situated some 700 or 800 feet west of the public square in Cleburne.   That some days after the signing of this contract the parties mutually agreed to substitute an Ideal engine instead of the McEwen mentioned in the contract.

The plaintiff purchased and procured the machinery for the plant from the several manufacturers of the same, and caused the same to be set up and erected at the places designated within the time stipulated in the contract to wit, September 17, 1893, with the following exceptions:   (1)   Plaintiff had not procured any of the twenty ward arc lamps, owing, as he claimed, to the inability of the manufacturers to furnish same.   These lamps were procured about thirty days thereafter, and nine of them put in place and wired in.   (2)   One of the circuits of the wires specified in the contract had not been completed, but the portion not completed was by consent of parties constructed upon another street.   (3)   Only 235 of the 600 16-candle power lamps have been put up and wired in.

On or about September 20, 1893, the plant was started up and operated by plaintiff two or three nights, when it was shut down.

About the middle of October, 1893, the plaintiff, through his duly authorized agent, F. M. Henshaw, and the defendant company entered into an agreement whereby the plaintiff agreed, substantially, that as the time within which the plant was to have been erected and completed had expired, he would proceed with the wiring in of the remaining lights and start up the plant and operate the same for thirty days at his expense, and not shut the same down, and if the same operated satisfactorily, the defendant was to accept the same and make

payment therefor as provided by the contract, and waive the plaintiff's failure to have the plant completed within the time specified within the written contract. The plaintiff did proceed with the wiring in of the remaining lights, and started up the plant and operated the same until about the 20th of October, when the same was shut down by plaintiff without defendant's consent. Plaintiff then demanded pay for the plant in accordance with the terms of the contract. Defendant refused payment, claiming that plaintiff had failed to comply with the contract.

There was evidence from which the jury would have been justified in finding the following facts in reference to the plant as furnished:

1. That the National alternator or dynamo and the Ideal engine furnished were not of the capacity contracted for.

2. That some of the wires composing the different circuits were too small, and did not come up to the terms of the contract.

3. That the arc lamps wired in did not furnish the light contemplated in the contract, and were insufficient. That plaintiff only wired in 235 incandescent lights and nine arc lights.

4. That plaintiff failed to procure the inspection of the plant by the electrician of the Texas Survey and Rating Bureau, and failed in good faith to make a reasonable effort to procure the same.

5. That the plant was not constructed and completed "in satisfactory running order," as provided by the contract.

6. That plaintiff did not complete the plant and put the same "in satisfactory running order" within the time specified within the original contract, or within the time specified in the contract as modified.

In deference to the verdict of the jury we find the above facts, and also find that had the plant been erected and completed in accordance with the terms of the contract, it would have been of the value of $8500. The price, $15,500, stipulated in the contract, was not the true price agreed to be paid; the actual price was the sum of $8000.

*Conclusions of Law.*—The second, third, fourth, sixth, seventh, and eighth assignments of error complain of the action of the court in overruling certain special exceptions filed by plaintiff to the defendant's answer. The propositions urged under the above assignments were presented to this court on the former appeal, and were then overruled. 44 S. W. Rep., 930. The trial court did not err in overruling the exceptions, and there is no merit in the above assignments.

The tenth assignment complains of the charge of the court as being misleading and calculated to confuse the jury. We do not think the charge complained of is subject to this criticism, and the tenth assignment is overruled. The eleventh assignment of error is also overruled.

The twelfth assignment of error complains of the action of the court in refusing a special charge requested by plaintiff defining the words "substantial compliance," as mentioned in the contract. We do not

think the jury could have misunderstood the meaning of the words "substantial compliance" as mentioned in the contract, and there was no necessity for giving the charge requested. Further, the charge as requested was on the weight of the evidence, and did not announce correct propositions of law.

We overrule the thirteenth and fourteenth assignments of error, as being without merit.

The fifteenth assignment of error complains of the charge of the court in reference to the measure of damages, in which the jury were told that if the plaintiff failed to furnish and deliver to defendant the electric light plant in substantial accordance with the terms, requirements, and conditions of said contract, and that his failure was without any fault on the part of the defendant, then defendant would be entitled to recover as damages from plaintiff the difference, if any, between the value of the electric light plant contracted to be completed, if the same had been completed in all respects in substantial compliance with the contract, and the amount of the contract price as fixed by said contract. This charge was considered by this court on the former appeal of this case and was then approved. 44 S. W. Rep., 930. In addition to the authorities there cited, we call attention to the cases of Randon v. Barton, 4 Texas, 289; Heilbroner v. Douglas, 45 Texas, 402; 1 Suth. on Dam., sec. 46, side p. 75; Benjamin on Sales, 17 ed., sec. 869. We overrule the fifteenth assignment of error.

The sixteenth assignment was passed upon on the former appeal, and was overruled.

There was no error in refusing appellant's special requested charge number 7, made the ground of the seventh assignment of error, as the evidence did not authorize the submission of the same.

The eighteenth assignment of error complains of the eighth clause of the court's charge, in which the jury were instructed, in effect, that the defendant had disclaimed any title to, or interest in, or right to the possession of, the electric light plant, and that plaintiff was entitled to recover the title and possession of the same from defendant; "provided, however, that if you find that plaintiff has complied with his contract as to the erection and construction of said plant, then it will not be necessary for you to return a verdict on this subject at all."

The criticism made to this charge is, that it is upon the weight of the evidence, and calculated to mislead and prejudice the jury. The charge is not subject to these criticisms. The proviso distinctly told the jury that if they found plaintiff had complied with his contract, that then they should not return any verdict on this issue.

There was no error in submitting to the jury the issue as to whether or not the plaintiff, by his agent F. M. Henshaw, and defendant, after the expiration of the time in which the plant was to have been completed, entered into a contract by the terms of which the plaintiff was to test and operate the plant for thirty days. This contract had been

specially pleaded by defendant. There was evidence tending to show such a contract was made. The charge was proper. The jury found their verdict under the sixth clause of the charge of the court, in effect, that the plaintiff did not furnish and erect the electric light plant in accordance with the terms of the contract. The verdict is not based upon the charge complained of. We overrule the nineteenth assignment of error.

The twentieth assignment complains of the court's refusal to give a special requested charge on this issue. The failure to give such charge was not error.

The twenty-first and twenty-second assignments of error complain of the action of the court in refusing certain special charges requested by plaintiff relating to the refusal of the defendant to consent to plaintiff's removal of the plant, and of the defendant's estoppel thereby. The defendant had tendered the plant to plaintiff in its pleading filed in 1895. The court instructed the jury, in effect, that if the defendant accepted the plant in its incomplete condition, then plaintiff could recover on the contract, less the damages sustained by defendant. The evidence, in our opinion, did not authorize the submission of the issue as to whether defendant refused to permit the plant to be removed. There was no error in refusing the special charges made the ground of the above assignments.

The twenty-fifth assignment complains of the action of the court giving a special requested charge of defendant, in effect, that if appellant had fairly and substantially completed his contract with appellee, except as to wiring in certain arc and incandescent lights, and that the work, so far as it had progressed, and the material furnished, was all of the character and quality contracted for, but that plaintiff had failed to wire in certain arc and incandescent lights as claimed by defendant, the plaintiff would, in such event, be entitled to recover the contract price sued for, less such diminution in the value of said plant as was represented by the part unfinished. Also defendant would be entitled to recover such loss by reason of the noncompliance by plaintiff with his contract as grew out of and arose from such failure as was fairly and reasonably within the contemplation of the parties at the time said contract was made. The court further instructed the jury that this charge left the issues before them as to whether or not they made an effort in good faith to secure the inspection of the plant in question by the electrician of the Texas Survey and Rating Bureau, and also subject to the instruction contained in the general charge with reference to the alleged contract made with Henshaw to run and test the plant for thirty days.

Appellant's contention is that this charge is misleading, and is in conflict with previous portions of the court's charge, and was a charge on the weight of the evidence. We do not think the charge was misleading, or that it conflicted with the general charge of the court, nor is it subject to the criticism that it is on the weight of the evidence. We overrule this assignment.

We overrule the twenty-fourth assignment of error as being without merit.

The twenty-fifth assignment of error complains of the action of the court in sustaining an exception to the testimony of the witness Henshaw, wherein he stated that plaintiff furnished an electric plant substantially as contracted for; and after the erection of the plant witness operated the same and found same to be in satisfactory running order. The witness had stated in detail all the facts within his knowledge, and the above testimony was but the opinion of the witness, and was properly excluded. Armendaiz v. Stillman, 67 Texas, 458; Railway v. Hall, 78 Texas, 169.

We overrule the twenty-sixth, twenty-seventh, and twenty-eighth assignments of error as being without merit. The questions raised in these assignments were passed upon by this court upon the former appeal of this case.

We do not think there is any merit in the twenty-ninth, thirtieth, thirty-first, and thirty-third assignments of error, and they are overruled.

Appellant's thirty-fourth assignment of error complains of the action of the court in overruling the motion for new trial. It is earnestly contended that there is no evidence supporting the finding of the jury that defendant had suffered damages to the extent of $500. The verdict of the jury, as before stated, is based upon the clause of the charge in which the jury were instructed, in effect, that if the electric plant was not furnished and constructed by plaintiff in accordance with the terms of the contract, and there had been no acceptance by plaintiff, then defendant was entitled to recover as damages the difference between the contract price and the market value of the plant, if it had been constructed in compliance with the terms of the contract.

The evidence of Clower was that the value of the electric light plant the size of this one, if put up of first class material and in accordance with the contract sued on, was $10,000 or $12,000. The evidence of Lovelady was that it would have been a cheap plant for $12,000, if it had been completed in all respects with the contract.

We think the evidence was sufficient to support the finding of the jury, and therefore overrule the thirty-fourth assignment.

We have examined the balance of the assignments of error and find them without merit, and hence overrule same.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.