## No. 2362.

## ISLAND CITY SAVINGS BANK *v.* AUGUST SACHTLEBEN.

1. BANKS AND BANKING — FRANCHISE — CONTRACT — CORPORATION.— The Island City Savings Bank, chartered in 1870, by special Act of the legislature, becoming insolvent, suspended business, and compromised with al

its depositors, save one, on the basis of a payment of seventy-four cents on the dollar. About two months after the suspension the insolvent bank transferred all its assets, including its name and franchise to a new association (whose names were not revealed on the trial) and obligated itself to pay back to the new association any amount it might be compelled to pay in excess of the seventy-four per cent compromise, the new association agreeing to pay for the old association any such amount. The new association resumed business under the old name and franchise. In a suit against the bank as re-organized, by the depositor who refused to accept the compromise, *held :*

(1) When a bank becomes insolvent, it may, under proper contract, transfer its assets to a new association who may continue a similar business without incurring liability for the debts of the insolvent corporation.

(2) If, however, the shareholders of the insolvent bank agree with a new set of shareholders that the latter shall become substituted to the rights of the former in the corporate property and franchise, in consideration of their agreement to pay the debts to a specified amount, and the new organization in its business uses the seal of the insolvent bank, it becomes liable for its unpaid debts.

(3) A corporation is not necessarily dissolved by insolvency. A surrender of it franchise will not be presumed as long as it has power to continue its business.

(4) Nor will the sale of its visible property to pay debts, and a temporary suspension of business, work a forfeiture of its charter, so long as it has capacity to increase its subscriptions, call in more capital and resume business.

(5) Nor will such temporary suspension work a forfeiture of its franchise if new stockholders purchase and resume business under the old charter.

(6) The unpaid obligations incurred by the Island City Savings Bank, and which existed at the time of insolvency, continued to exist against it when re-organized. The artificial existence called the body corporate remained the same.

(7) The bank as re-organized was liable to the depositor who refused to compromise for the full amount of his debt.

2. CASES CITED AND APPROVED.—Bradt v. Benedict, 17 New York, 93; Brinkerhoff v. Brown, 7 Johns's Chancery, 217; Rochester City Bank v. Paige, and Longley v. The Longley Stage Company, 23 Maine, 39, cited and approved.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

*McLemore & Campbell,* for appellant, contended that the franchise to organize a corporation can only be exerted once for all, for the simple act of organization exhausts the authority, and having once been effected, is legally incapable of repetition.

And the franchise to organize and to continue in being as a corporation belongs to the corporators and members. The powers and privileges vested in and to be exercised by the corporate body or corporation are the franchises of the corporation.

That the corporation can dispose of its own powers and privi-- leges, its franchises, but not its corporate existence; and, notwithstanding such disposition of its franchises, the corporate body or corporation continues its existence for all legal purposes. And hence the transfer by the "Island City Savings Bank," as a corporation, of all of its privileges and powers as such, did not pass to the transferee the corporate existence of the corporation of that name; but the "Island City Savings Bank," as a corporation, continued to exist for the purposes of suits against it, and for other purposes it may be, and the transferee of the powers and privileges of the corporation would not become the corporation; and cited Memphis Railway v. Commissioners, 112 United States, 619, in particular, et seq.; Branch v. Atlantic & Gulf Railway Company, 3 Woods, 481–487; Wayne v. Myddleton, 2 Kelly, 383; Morgan v. Louisiana, 93 United States, 223; Angel & Ames on Corporations, eleventh edition, section 191, and note, with authorities.

*Burnett & Hanscom,* for appellee, cited Constitution of 1876, Article 16, section 16; Revised Statutes, Articles 1243 and 1265; International & Great Northern Railroad Company v. Brett, 61 Texas, 486; Railroad Company v. Bremond, 53 Texas, 120; 2 Morawitz on Corporations, sections 812, 750, 775; Mobile v. Watson, 116 United States, 289; Broughton v. Pensacola, 93 United States, 266, 270.

GAINES, ASSOCIATE JUSTICE. This suit was brought by appellee against appellant to recover the balance of a bank deposit. Appellant denied that appellee had ever made any deposit with it, and alleged in its answer that the transactions upon which appellant had brought this suit took place before it, the defendant company, was organized. The nature of this defense appears more distinctly from the facts as found by the court below, which we here copy in full:

"The Island City Savings Bank was incorporated with banking privileges by special law of legislature of June 20, 1870, and its charter amended December 1, 1871, and again amended on June 3, 1873, which see without herein transcribing.

"The said bank organized under its charter very shortly there-after, and opened its banking house and procured seal, and continued its business without intermission until January 25, 1885, on which day it failed and closed its doors and was insolvent, and all of its assets, according to the best estimates, would not pay seventy-four per cent of its debts to the depositors, and immediately after the closing of its doors a great many attachments and garnishments were sued out by various depositors.

"In a few days after the failure of the bank public meetings of the depositors were held and committees appointed to investigate the affairs of the bank, and it was reported that the bank's assets would not pay seventy-four per cent of its debts due depositors and others; and thereupon several citizens, by subscription, contributed about twenty thousand dollars, which, added to the assets of the bank, would enable the bank to pay seventy-four per cent to the depositors; and thereupon the bank proposed to the depositors that it should pay them seventy-four per cent of their claims, one fourth of which per cent was to be paid immediately in cash and the balance in three equal quarterly installments; and nearly all the depositors, including those who had attached and garnisheed, accepted the proposition of the bank, and thereupon the attachments and garnishments were dismissed, and the depositors received their cash installments and the notes of the bank for the three quarterly installments.

"But the plaintiff in this suit, Sachtleben, refused to accept said proffered compromise, and was the only one of the depositors who refused to accept the compromise offered by the bank as aforesaid.

"Some time in February, 1885, or early in March, 1885, several persons, whose names are not shown by the evidence, associated themselves together and called themselves the Island City Savings Bank, but the manner of the organization is not shown by the evidence, and to this organization the insolvent Island City Savings Bank transferred all of its assets of every character, including its name and franchise, and obligated itself to pay back to this new association whatever amounts this new association might ever be compelled to pay in excess of the seventy-four per cent compromise aforesaid, this new association agreeing to pay for the old association the said seventy-four per cent.

"This new association organized itself in February, 1885, or early in March, 1885, styling itself the Island City Savings Bank, and carried on from that time a banking business in the same

office theretofore occupied by the old organization, and claimed the franchise of the old association, and have continued ever since to use the seal of the old corporation, and its assets and franchises in carrying on the banking business of the new organ-. ization under the name of the Island City Savings Bank; having a teller, cashier and president, the teller being the same person that occupied the position in the old association, but the cashier of the old corporation died before the organization of the new organization, and hence the new organization has a different cashier, and the evidence does not show who are the other officers of the new organization, or in what respect they differ from the former or old organization.

"The plaintiff in this suit, Sachtleben, did not agree to take seventy-four per cent of his deposit, and on April 9, 1885, he demanded of the new organization, styling itself the Island City Savings Bank, the full amount of his deposit with the old Island City Savings Bank; which deposit at the time of the failure of the old Island City Savings Bank amounted to the sum of four thousand one hundred and fifty-two dollars and fifteen cents, after deducting credits, which sum of four thousand one hundred and fifty-two dollars and fifteen cents, so deposited with the old Island City Savings Bank, the said old Island City Savings Bank promised to pay to plaintiff on demand, and the same has never been paid, the defendant being unwilling to pay more than seventy-four per cent of the same and interest, which the plaintiff Sachtleben, refused to receive in full satisfaction of his said deposit."

Now it is contended, on behalf of appellees, that the re-organization which took place in February or March, 1885, resulted in the formation of a new and distinct company, and was not the continuation of the original corporation. We do not doubt that when the bank became unable to pay its debts it was competent to transfer its assets to a new association, who might continue a similar business without incurring any liability for the debts of the insolvent corporation, and it would make no difference in this respect if the new company consisted in part of the stockholders of the original corporation, and transacted its business through one or more of its officers.

Such, however, are not the facts of this case. As we construe the findings, upon the failure of the bank, the shareholders at that time agreed with a new set of shareholders that the latter should become substituted to the rights of the former in the cor-

porate property and franchises in consideration of their agreeing to pay its creditors to the extent of seventy-four cents on the dollar. This is shown by the facts that the business was resumed in the original name of the corporation, and that the original seal was used in the authentication of its transactions. The use of the seal conclusively establishes that the operations of the concern were carried on under the franchises of the original charter and its amendments, for since the adoption of the present constitution no new charter could have been obtained for the purpose of doing a banking business.

It is uniformly held that a corporation is not dissolved by the mere fact that it becomes insolvent. It is so decided in New York, where they have a statute which provides that inability to pay its debts and suspension of business shall be deemed a surrender of its franchises. The court there say that a surrender will not be presumed as long as it has power to continue or resume its business. (Bradt v. Benedict, 17 New York, 93.)

In Brinkerhoff v. Brown, 7 Johns's Chancery, 217, Chancellor Kent says: "It does not follow, that a corporation is dissolved by the sale of its visible and tangible property for the payment of its debts and by a temporary suspension of its business, so long as it has its moral and legal capacity to increase its subscriptions, call in more capital and resume its business." (See also Mitchell v. Rochester City Bank, 11 Paige, 118.)

The bank in this case was insolvent, but there is no rule of law to prevent the stockholders of the insolvent corporation from transferring their interest to others who were willing and able to put it upon a solvent footing and to enable it to carry on the business for which it was originally organized. That this was done in fact, we think, the findings of the court sufficiently show.

There being a mere change of membership and not a change of the corporation itself, it follows that the obligations existing against it before the original organization, continued to exist against it when reorganized. In Longley v. Longley Stage Company, 23 Maine, 39, the defendant corporation had organized on the twenty-eighth day of March, and in June following the stock holders agreed to consider the first organization illegal and to reorganize, which was accordingly done. The plaintiffs were creditors and stockholders of the old organization, and also became parties to the new by taking stock in it. They were held entitled to recover their debt of the corporation as newly organ-

ized. The principle is that the artificial person, the body corporate, remains the same, and can not divest itself of its liabilities by a change of membership or a reorganization.

We conclude that the court below did not err in holding appellant liable upon the debt. There are no other errors assigned, but the cause has been submitted with a suggestion of delay; and we think essentially the same question of interest is presented by the record, which was raised in the case of Heidenheimer v. Ellis, this day decided. The court below allowed interest from the date of demand. Under the ruling in this case we hold that this was correct.

We find no error in the proceedings of the court below, and affirm the judgment, but without damages.

*Affirmed.*

Opinion delivered February 25, 1887.