## CATTLEMEN'S TRUST CO. et al. v. BECK. (No. 5287.)

(Court of Civil Appeals of Texas. Austin. April 1, 1914. On Appellee's Motion for Rehearing, April 29, 1914. Rehearing Denied June 3, 1914.)

1. EVIDENCE (§ 441*) — PAROL EVIDENCE — VARYING WRITTEN INSTRUMENTS.

One signing a stock subscription contract which recites that no representation made by the person taking the subscription shall annul the contract, unless reduced to writing, and that the contract constitutes the sole agreement, may not, in the absence of fraud, accident, or

mistake, show by parol an agreement not embodied in the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2080–2047; Dec. Dig. § 441.*]

2. CORPORATIONS (§ 583*)—MERGER OF CORPORATIONS—CONSENT OF STOCKHOLDERS—NECESSITY.

A stockholder who is present by proxy, but who declines to vote for a merger of corporations, does not assent thereto, and is not bound by the action of the majority stockholders favoring a merger.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2338–2340; Dec. Dig. § 583.*]

3. APPEAL AND ERROR (§ 1001*)—VERDICT—CONCLUSIVENESS.

A verdict amply supported by evidence will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. § 1001.*]

4. CORPORATIONS (§ 579*)—NEW CORPORATION — LIABILITY FOR DEBTS OF OLD CORPORATION.

In the absence of an agreement to that effect, a new corporation, organized to succeed an old one, is not liable for the debts of the old one, unless the new corporation is merely a continuation of the old one, or unless the new corporation expressly or impliedly assumes the debts of the old corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2307, 2309, 2313–2318; Dec. Dig. § 579.*]

On Motion for Rehearing.

5. CORPORATIONS (§ 579*)—NEW CORPORATION —LIABILITY FOR DEBTS OF OLD CORPORATION.

A new corporation organized to succeed an old one, which assumes the debts and receives and takes possession of the assets of the old one, is liable for a debt of the old one not in excess of the assets.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2307, 2309, 2313–2318; Dec. Dig. § 579.*]

Appeal from District Court, Coleman County: John W. Goodwin, Judge.

Action by F. Beck against the Cattlemen's Trust Company and others. From a judgment for plaintiff, defendants appeal. Affirmed on motion for rehearing.

A. H. Kirby, of Ft. Worth, Woodward & Baker, of Coleman, and Theodore Mack, of 'Ft. Worth, for appellants. Snodgrass, Dibrell & Snodgrass, of Coleman, for appellee.

RICE, J. On the 30th of July, 1912, appellee, Beck, through the Texas Underwriters Company, subscribed for 125 shares of stock at $20 per share in the Cattlemen's Trust Company of Arizona, executing in writing a subscription contract therefor, as well as his three notes in payment thereof, one for the sum of $250, one for $375, and another for $1,875, the first payable to the Texas Underwriters Company, the second to J. D. Berry, agent of said company, and the third to the order of said Cattlemen's Trust Company. Thereafter, during the fall of 1912, said Cattlemen's Trust Company, by appropriate resolutions, merged all of its assets into the

Cattlemen's Trust Company of Ft. Worth, which succeeded to all the rights and privileges of the first company, and this suit was brought by appellee against both of said trust companies, as well as the Texas Underwriters Company, for the purpose of canceling said subscription contract and said $1,875 note, and praying for judgment against all of said defendants for the amount of said other two notes, alleging that said first company, acting through its authorized agents, made certain false and fraudulent representations to plaintiff to the effect, among other things, that said first-named company was a Texas corporation, with an authorized capital stock of $5,000,000; that it had arranged to obtain 4 per cent. money in the East, and, if plaintiff would subscribe for said shares of stock therein, that it would loan its stockholders and shareholders, including this plaintiff, money at 6 per cent. and it would commence loaning said money on October 1, 1912; that relying upon said representations, which were false and fraudulent, plaintiff executed said subscription contract and notes; that said first note was paid in ignorance of the falsity of said representations, and that the second note had passed into the hands of an innocent purchaser for value, and that the third note of $1,875 was held by the Cattlemen's Trust Company of Ft. Worth; that thereafter said Cattlemen's Trust Company of Arizona was, without the consent of plaintiff, merged into the Cattlemen's Trust Company of Ft. Worth; and that said defendants were acting as partners.

The Cattlemen's Trust Company of Ft. Worth, after special exceptions and general denial, defended on the ground, among other things not necessary to set out, that plaintiff had consented to said merger, and likewise had ratified the same by the payment of one of the notes, with knowledge of the fact that such representations were false; that by reason of the execution and delivery to the first company of said subscription contract and notes that it had paid out for promotion expenses to the Texas Underwriters Company 25 per cent. of the sale price of such stock, and relying upon the truth of said written statements set forth in said subscription contract, and without any notice of the falsity thereof, if they be false, defendant acquired said subscription of plaintiff and his note for $1,875. It denied partnership under oath, and the other two defendants adopted its answer as their own.

There was a jury trial, the court submitting the case on special issues, and upon which a verdict was rendered in behalf of appellee, from which this appeal is prosecuted.

On the trial plaintiff was permitted to show by his own testimony and that of other witnesses that J. D. Berry, the agent of the Texas Underwriters Company who procured

his subscription contract and notes, represented to him that the Cattlemen's Trust Company was a Texas corporation; that it had made arrangements to get money at 4 per cent. in the East, and would loan money to its stockholders, including plaintiff, at 6 per cent. Appellants objected to the introduction of this testimony on the ground, as shown by their bill, that it was an attempt to vary by parol a written contract, without alleging that such written contract was procured by fraud, accident, or mistake; and, second, because plaintiff was precluded by the terms of said written contract from claiming that there were any other or different representations than those contained therein. The subscription contract referred to reads as follows:

"No. 79.

"All drafts, check, and money orders must be made payable to the Cattlemen's Trust Company, and all payments on stock forwarded with this application to said company.

"Subscription for Stock.

"No. Shares, 125.　　　　　Amount, $2,500.

"This is to certify that I hereby subscribe for one hundred and twenty-five shares of the capital stock of the Cattlemen's Trust Company, Fort Worth, Texas, for which I agree to pay twenty five hundred dollars to said company.

"I hereby agree that no statement, representation, agreement, or warranty made to me by the person taking this subscription shall in any way operate to cancel or annul this contract or be a defense thereto, unless reduced to writing and filled in on the following line:

"I further agree that this application and contract constitutes the sole and entire agreement, representation, and warranty between us, and that the said company reserves the right to reject this subscription within twenty days from receipt thereof and return to the subscriber the full amount paid said company, and, further, that 25 per cent. of the sale price of the stock herein purchased is to be and will be expended for organization and promotion expenses, to which I expressly agree and hereby authorize.

"I further certify that I have read the foregoing contract prior to signing the same and understand the contents thereof.

"I hereby make, constitute, and appoint A. L. Camp, of Ft. Worth, Texas, as my true and lawful attorney to represent me and vote my proxy, and I hereby ratify and confirm the acts of my said attorney until hereinafter annulled by me in writing. This proxy is revocable at my pleasure.

"Dated this 30th day of July, A. D. 1912.

"Address, Coleman, Texas.

"[Signed] F. Beck, Subscriber.

"Witnessed by J. D. Berry, Salesman."

There was no allegation of fraud, accident, or mistake in the execution of said contract; the only allegations were that in executing the contract of subscription the Cattlemen's Trust Company, acting by and through its duly authorized agents J. D. Berry and O. B. McClung, falsely and fraudulently represented to plaintiff that said company was a Texas corporation, with an authorized capital stock of $5,000,000, that, if plaintiff would subscribe for shares of stock therein, the said corporation had arranged to get 4 per cent. money in the East, and would loan its subscribers and shareholders money at the rate of 6 per cent. per annum, and that it would commence loaning its shareholders money about October 1, 1912.

[1] We are inclined to think that plaintiff was entitled to prove under these allegations that Berry had represented that the company was a Texas corporation, with an authorized capital stock of $5,000,000, and that he had stated that it had arranged to get 4 per cent. money in the East, still we do not believe that he should have been permitted to show that it had promised to loan its subscribers, including himself, money at 6 per cent., for the reason that the last statement would have become a part of the contract itself, as well as an inducement to its execution, and in the absence of any allegation showing that this was left out of the written contract on account of fraud, accident, or mistake, it was not permissible to prove it; especially is this true, we think, when considered in connection with the recitations contained in the subscription contract above set out, which were made by plaintiff, and which would estop him from asserting the contrary. See 10 Cyc. 391; 1 Wigmore on Evid. §§ 24–39; Towner v. Lucas, 13 Grat. (Va.) 705–716; 2 Clark & Marshall on Corp. pp. 1456, 1457; Id. p. 1470; Wallace v. Pruitt, 1 Tex. Civ. App. 231, 20 S. W. 728, 729; Parker v. Campbell, 21 Tex. 763; Minchew v. Case, 143 S. W. 368; Williams v. Hardie (Sup.) 22 S. W. 400, 401; Schwarz v. Bank, 67 Tex. 217, 2 S. W. 865; Sanger v. Slayden, 7 Tex. Civ. App. 605, 26 S. W. 847; Threshing Machine Co. v. Davis, 40 Minn. 110, 41 N. W. 1026, 3 L. R. A. 797, 12 Am. St. Rep. 701; 11 Am. & Eng. Ency. Law, p. 401; 16 Cyc. 701, note 78. And since the charge required, and the jury found, that plaintiff must have relied on all of these representations before being permitted to set aside such contract, it must be held that the court erred in admitting this testimony over appellant's objection; however, in view of our holding on the succeeding assignment, this will not constitute reversible error, because, notwithstanding such error, plaintiff would have the right to show, as he did, that he did not consent to said merger.

[2] It is contended by appellants that plaintiff consented to this merger, and was bound thereby. The evidence, in our opinion, not only fails to show this, but on the contrary discloses that plaintiff was present by his proxy and declined to vote for such merger. This was equivalent, under all the circumstances in evidence, to objecting to the same; at least it falls far short of showing an assent thereto. The rule seems to be that a dissenting stockholder is not bound by the action of the majority in such matters. See 10 Cyc. 286B; Gresham v. Island City Savings Bank, 2 Tex. Civ. App. 52, 21 S. W. 556. In 10 Cyc. supra, it is said:

"A reorganization may take place by the formation of a new corporation and the transfer to it of the assets of the old corporation, in consideration of the issue of stock of the new company to the shareholders of the old, but the rights of

creditors cannot be prejudiced thereby; nor, in the absence of statutory provision, can a majority of the shareholders force a minority into such a scheme against their will, or compel them to accept an arbitrary value for their shares."

See, also, I. & G. N. R. R. Co. v. Bremond, 53 Tex. 96; Lauman v. Lebanon R. R. Co., 30 Pa. 42, 72 Am. Dec. 685; Taylor v. Earle, 8 Hun (N. Y.) 1; Ervin v. Or. Ry. Co. (C. C.) 27 Fed. 625; Tanner v. Lindell Ry. Co., 18 Mo. 1, 79 S. W. 158, 103 Am. St. Rep. 534; Farish v. Cieneguita Copper Co., 12 Ariz. 235, 100 Pac. 781; Ferguson v. Meredith, 1 Wall. 25, 17 L. Ed. 604; 5 Thompson on Corp. (2d Ed.) § 6059. We therefore overrule appellant's contention in this respect, and hold that such reorganization did not and could not bind appellee, under the circumstances shown by the record.

[3] We overrule appellants' contention to the effect that appellee, with a knowledge of the falsity of said representations, paid off the first note, thereby ratifying such contract, and therefore was estopped to claim that he was defrauded by reason of the representations set out, because this issue was resolved by the finding of the jury against appellants' contention, which finding is amply supported by the evidence.

[4] We have concluded, however, that appellants' twenty-first assignment is well taken, which urges that the court erred in rendering judgment for plaintiff against the Cattlemen's Trust Company of Ft. Worth for $742, the amount of the two smaller notes. In the first place there is no evidence in the record showing or tending to show that the new company assumed the liabilities of the old. The law seems to be that, in the absence of an agreement to this effect on the part of the new company, it is not bound for the obligations of the old. See 10 Cyc. 287, 288; Island City Savings Bank v. Sachtleben, 67 Tex. 420, 3 S. W. 733; Eddy v. Hinnant, 82 Tex. 354, 18 S. W. 862; Dallas, etc., Ry. Co. v. Maddox, 31 S. W. 702; Williams v. Texas, etc., Ry. Co., 22 Tex. Civ. App. 278, 55 S. W. 130; Abilene Cotton Oil Co. v. Anderson, 41 Tex. Civ. App. 342, 91 S. W. 607. It is said in 10 Cyc., supra:

"With regard to liability for debts of the old corporation, the general rule is that a new corporation organized to succeed an old one is not liable for the debts of the latter. The new corporation will, however, be liable for the debts of the old one (1) where the circumstances are such as to warrant the conclusion that the former is not a separate and distinct corporation, but merely a continuation of the latter, and hence the same person in law, and (2) where it has, in express terms, or by reasonable implication, assumed the debts of the old corporation, where this liability is imposed by the statute under which the reorganization takes place, or where such liability is imposed upon it by the decree of the court on foreclosure."

Besides this, the Ft. Worth company derived no benefit whatever from these notes; they were paid out by the Arizona company to the Texas Underwriters Company for promoting the organization of the former, and never at any time went into the hands of the Ft. Worth company.

After a full consideration of the remaining assignments, we think they should be overruled, and it is so ordered.

Finding no error in the judgment of the trial court, except in so far as it gave judgment against the Cattlemen's Trust Company of Ft. Worth for $742 and interest, the judgment will be so reformed as that plaintiff take nothing against said defendant in this regard; but in all other respects the judgment of the court below is affirmed.

Reformed and affirmed.

KEY, C. J., not sitting.

On Appellee's Motion for Rehearing.

RICE, J. [5] It appears from the motion for rehearing filed herein by appellee that we were in error in holding that there was no evidence showing that the Cattlemen's Trust Company of Ft. Worth assumed the liabilities of the Cattlemen's Trust Company of Arizona, and likewise in holding that it had not received any benefit or come into possession of any assets from said company.

Upon a reinvestigation of this matter, we find that the evidence in both these respects shows that said Ft. Worth company not only agreed and bound itself to assume the liabilities of the Arizona company, but did in fact receive and take possession of all the assets of said company, which were in excess of the judgment rendered against it herein, for which reason we have concluded that we were in error in reversing and reforming the judgment as set forth in the original opinion herein.

We therefore now grant appellee's motion for rehearing, set aside our former holding in this respect, and in all things affirm the judgment of the court below.

Motion granted.