## G. HEILBRONER v. WILLIAM C. DOUGLASS.

1. EVIDENCE—CONTRACT, ALTERATION OF—FRAUD.—In suit on a breach of contract for a failure to deliver specific articles in consideration of other articles which had been delivered, the defendant set up a receipt for money paid, which recited that the specific articles bought by defendant were to be paid for in money, and which specified the price to be paid for each article. The plaintiff admitted the execution of the receipt, and that it was unaltered, except as to the particular description of the articles, which, it was averred, had been changed: *Held*, (1) That a charge to the jury, to the effect that an alteration of the contract contained in the receipt, if made by defendant, without plaintiff's consent, so as to enlarge the defendant's rights under it, was a fraud, and destroyed the validity of the instrument, was error; (2) That the charge would be correct, in reference to a contract in writing upon which recovery was sought; but the receipt, being set up by the defendant as evidence that the specific articles were to be paid for in money, and not in other articles, and its correctness to that extent being admitted, it was proper evidence in resisting a claim for damages for the failure to pay in specific articles.

2. EVIDENCE—CONFEDERATE MONEY.—The fact that a contract was to be discharged in Confederate money, like any other fact, may be proved by the circumstances attending the transaction.

3. ATTACHMENT—CONVERSION—RECONVENTION.—A defendant, when property has been seized under attachment, which is afterwards lost to him by its delivery to some other person, without his fault or consent, and with the consent of the plaintiff, may plead in reconven-

tion its conversion, and is entitled to a credit for its value on any debt which the plaintiff may establish.

4. DAMAGES—MEASURE FOR NON-DELIVERY OF SPECIFIC ARTICLES.—Where money or other consideration for an article contracted for has not been paid in advance of the time when the article was to have been delivered, or where extraordinary circumstances have occurred to produce extreme prices in the article during a long period of time, over which the suit has been protracted without any fault of the defendants, or where there are other circumstances attending the transaction, not in the ordinary course of trade, which would render it inequitable to allow as a measure of damages the highest price of the article after default in delivery, the measure of damages should be the value of the article at the time agreed on for delivery, with interest on that amount.

5. QUALIFIED.—Calvit v. McFaddin, 13 Tex., 324, and Randon v. Barton, 4 Tex., 289, qualified.

APPEAL from Grayson. Tried below before the Hon. Thomas J. Bonner, special judge.

*Hare & Bledsoe*, for appellant.

No brief for appellee has reached the reporters.

ROBERTS, CHIEF JUSTICE.—The appellee brought suit against appellant on the 12th of November, 1863, upon a breach of contract to deliver in August, 1862, three hogsheads of sugar, weighing 1,000 pounds each, alleged to be worth seventy five cents per pound, which had been paid for by a flock of sheep before that time delivered to appellant, said sugar being the balance of the sugar due and not delivered. The sheep sold (406 in number) were estimated under the contract at three dollars per head, and were paid for with money and sugar at ten cents per pound, except the three thousand pounds of sugar, which was sued for, and its value claimed as aforesaid. The appellee, on the trial, on the 31st of January, 1873, obtained a verdict and judgment for the sum of two thousand and twelve dollars and forty-five cents, ($2,012.45.) The defendant, Heilbroner, denied that the contract was to pay sugar, as alleged by the plaintiff, and

set out a receipt for the money paid down, $600, which recited that the sheep were to be paid for in money at three dollars per head.

The plaintiff, Douglass, replied that the receipt was altered after its execution in reference to the number of sheep and the mark of the sheep, and swore to the plea as one in the nature of a plea of *non est factum.* Douglass, in his testimony, admitted that he signed the receipt, and that it was on the trial as it was when signed, except the said alteration, but also said that the contract was to deliver sugar.

The court charged the jury that if they believed from the evidence that the contract was to have been paid all in money, instead of a portion in sugar, then they should find for the defendant.

But the court, on this subject, also told the jury, as follows: "If you believe from the evidence that the defendant, without the consent of the plaintiff, added to the written contract words which enlarged his rights under it, then his act was a fraud, and destroyed the validity of the instrument, and you will disregard it in making up your verdict."

This charge is certainly correct in reference to any contract in writing upon which a recovery is sought. This instrument was not set up in the answer for that purpose, but in part as evidence that the sheep were to be paid for in money, and not in sugar, and in that point of view it was not improper for the jury to regard it to the extent that the plaintiff in his testimony admitted it to be correct. To that extent, it was an embodiment of plaintiff's admission of what the contract was, and the charge of the court was probably calculated to produce the impression that, if it had been altered, it could not be regarded by them for that or any other purpose in making up their verdict, and that its nullity carried from their consideration the important admission of plaintiff of the part of it that was correct, which was very material to the issue under the first charge as above quoted.

The defendant set up in his answer that by the contract

the sheep were to be paid for in Confederate treasury notes, and the court charged the jury that if such was the case the contract was void, and plaintiff could recover nothing. The struggle on the trial seemed to be mainly on this issue, and the court further charged the jury upon it that "nothing but proof of a positive agreement by the plaintiff at the time of making the contract, to receive Confederate money in payment of it, will authorize you to conclude that it was to be paid in that paper." The pleadings were shaped in reference to the first charge·here referred to, being the correct law of the case, which would not now be so held. It is adverted to now for the purpose of indicating the view that if the pleadings were so shaped as to make it a practicable question as to whether or not the sheep were to be paid for in Confederate money under the contract as made, the charge that it must be established by the proof of a positive agreement might produce a wrong impression as to the correct rule of evidence; for it is not perceived why that fact might not be proved by the circumstances attending the transaction as well as any other fact, if they were sufficiently pertinent and potent to convince the minds of the jury of the truth of the existence of the fact.

There was an attachment sued out by the plaintiff, and levied on two barrels of sugar, alleged to be worth one hundred and fifty dollars, which, by the consent of plaintiff, was released, and turned over to a man who assumed to be the attorney of the defendant in the case, but who, by a proceeding subsequently instituted, was adjudged not to be his attorney in the case; and upon which the defendant alleged the loss of the said sugar, and claimed the value of it in set-off. Upon this issue the court charged the jury that "the plaintiff, Douglass, might lawfully release his levy upon any property of defendant, and consent that the sheriff should deliver the same to an attorney, who claims to represent the defendant, and would not be responsible for the sugar appropriated by said attorney, unless he knew that such attorney had no

authority from defendant, and fraudulently combined with the attorney to give him possession of the sugar."

The seizure of the sugar by the sheriff, under the plaintiff's attachment, took it from the possession and control of the defendant, and if it was lost to him by delivering it to the possession of some person who had no authority from the defendant to receive it, and without his fault or consent, and with the consent of the plaintiff, the defendant was entitled to a credit for its value on the judgment by way of reconvention, it being in legal effect a conversion of his property taken by virtue of the attachment as his property, for which he might claim compensation in this suit. The good faith of plaintiff in the transaction was an immaterial matter. The property was seized for the benefit of plaintiff, and process procured by him, and lost to the defendant by the consent of plaintiff. This is certainly the rule of law in the case of the levy on personal property under an execution, and, upon principle and reason, it would seem to be equally applicable to the case of a seizure of personal property under an attachment. (Bryan *v.* Bridge, 10 Tex., 153; White *v.* Graves, 15 Tex., 187; Garner *v.* Cutler, 28 Tex., 178; Townsend *v.* Smith, 20 Tex., 470.)

The most important legal question in the case relates to the charge of the court as to the measure of damages upon which the jury must have acted in finding a verdict for so large an amount in favor of the plaintiff. In this charge the jury was instructed as follows: "If you believe from the evidence that the defendant, for a valuable consideration to him paid, agreed and promised to deliver to the plaintiff, in the town of Sherman, any number of pounds of sugar, and that he had failed to pay any part of it, then you will find for the plaintiff the value of the sugar, at the highest market price in Sherman between the date when the delivery should have been made and this date,"—it being the date of the trial, to wit, 31st of January, 1873, over ten years from the time at which it was alleged that the sugar was contracted to be delivered, to wit, in August, 1862. This was announced to be

the correct rule in the case of Calvit v. McFadden, 13 Tex., 324, in which the facts are not stated. Also, it was announced in the case of Randon v. Barton, 4 Tex., 289, which was a suit for the failure to deliver land certificates, and their value at the date of the trial was made the criterion in estimating the damages. This rule has, as is believed, been generally followed in this State. The rule is held to be different in some other States.

In the leading case referred to in the decision of Randon v. Barton, 4 Tex., 289–293, it is said: "But we doubt the propriety of giving the vendee in all cases, as a measure of damages, the highest price of the article between the day when it should have been delivered and the day of trial. If he immediately, or without any unreasonable delay, commence and prosecute his action, we think it just and proper that the fluctuations in price should be exclusively at the hazard of the defendant, the plaintiff having done everything in his power to have the contract settled and adjusted, and which is prevented solely by the laches or default of the defendant." (Clark v. Pinney, 7 Cowen, 681.)

In that case the money had been paid in advance. But where the money or other consideration for the article contracted for, has not been paid in advance of the time when it was to have been delivered, or when extraordinary circumstances have occurred to produce extreme prices in the article during a long period of time, and the suit has been protracted without any fault of the defendant, or when the article contracted for is of a perishable nature, or such as is to be readily parted with if delivered, or when there are other circumstances attending the transaction, not in the ordinary course of trade, calculated to render such a measure of damages inequitable and unjust, the rule of the highest price in the intervening time would not be applicable, but the ordinary rule might be more appropriate, which is to allow the value of the article at the time agreed on for delivery, and interest on that amount. (Sedg. on Dam., 260.)

This rule, we think, might well have been applied in this case, with the addition of interest, on several grounds. (Sedg. on Dam., and the English authorities quoted, 263, 272, 273.)

The sugar, considering the quantity, was doubtless contracted for to be resold by retail or otherwise, and would not likely have been but a short time on hand, if it had been delivered, during which there might have been no great fluctuation in price. The defendant may have had, so far as anything appears in this case, reasonable grounds to resist this claim as a contract to be paid in sugar rather than in money, as contended for by plaintiff in this suit. The suit was not brought for more than twelve months, and was protracted for nearly ten years, without any apparent fault of defendant, during which time there were the most extraordinary circumstances of a public nature to enhance the price of the article of sugar, which could not reasonably have been anticipated, so as to form a consideration or inducement to the contract. It does not appear that defendant had the sugar to deliver, or that he withheld it willfully to get a better price, or for any other advantage to himself. Under such circumstances, the jury, if they believed the contract was to pay sugar, should have been allowed a broader discretion to have estimated the real loss to the plaintiff in the failure to deliver the sugar, according to the nature and subject-matter of the contract and intervening circumstances; and if, with such discretion, they had found such a verdict as they did in this case, the court should have, upon the motion of the defendant, set it aside, as exorbitant and unjust, it being over six times more than the agreed value of the sugar, if it had been delivered when promised to be delivered. The true measure of damages in all cases is that which will completely indemnify the plaintiff for breach of the contract. (Sedg. on Dam., 261.)

For the errors in the charge of the court, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED