WALTER GRESHAM v. ISLAND CITY SAVINGS BANK.

No. 80.

**1. Bank Reorganization—Action of Stockholders and Directors.** In 1885, under proposition for reorganization made by some of the directors and stockholders of an insolvent bank, it was proposed that if all stockholders would surrender their shares of stock, and the creditors would accept seventy-four per cent of their debts in full payment, the proposers would provide $1,000,000 for the purpose of resuming business under a new organization. At a meeting of the stockholders of the insolvent bank, at which more than three-fourths were present, the proposition was accepted, and the directors were authorized to do all that was necessary to carry into effect the proposed arrangement, which they subsequently did by transferring to the new organization all of the property of the bank. One thousand shares of new stock were issued and taken, and these new stockholders assumed control of the bank. All the old stock, except thirty-two shares held by Corbin and Van Sickle, and now by appellant, were surrendered. Corbin and Van Sickle were not present at any of the meetings, and never in any way consented to or ratified the action of the other stockholders. They had paid in full for their stock, and advanced no additional sum, and took none of the new shares. Thereafter, by resolution, the directors undertook to make an assessment of $100 on each share of the old stock, and declared that unless payment thereof was made

in thirty days by the owner of the old stock, it should be forfeited. Notice of this resolution was given to Corbin and Van Sickle. *Held:*

1. It is clear that the action taken by the stockholders and directors of the bank did not have the effect to cancel the thirty-two shares of stock held by Corbin and Van Sickle. Without their consent, their shares could not be thus forfeited.

2. As to paid up stock assessments, Corbin and Van Sickle having paid par value for their stock, it was not subject to further assessment for any purpose. The corporate existence of the old organization continued, notwithstanding its insolvency and suspension of business, and the legal rights of shareholders could not be taken from them by a majority, however large.

3. As to the rights of the new organization, it acquired all the rights represented by the surrendered stock, and the new shares when issued represented both the rights of the old stockholders who had surrendered their shares, and those acquired through the new subscriptions.

2. **Measure of Damages.**—There were 1141 old shares, and 1000 new, and the rights of Corbin and Van Sickle (now owned by appellant), were therefore as 32 to 2141, and the measure of damages should be the value of the stock, treating it as 32 shares in 2141, at the time of its conversion, with legal interest thereon from that day to the day of trial.

3. **Old Stockholder not Stockholder in New Bank.**—Because of his delay in demanding recognition as a stockholder, and suing for the value of his stock, the aid of equity to reinstate appellant in the enjoyment of the privileges of a stockholder in the new organization should be withheld. The managers of the bank have been allowed to go on and establish it in accordance with the arrangements made in 1885, and the business of the bank is doubtless readjusted to its changed conditions, and appellant can be compensated in money for any damage he has sustained, and that should be his remedy.

4. **Date of Conversion.**—The conversion of the stock of appellant took place at the date of the demand by appellant for recognition as a stockholder.

5. **Proper Parties.**—The stockholders are not ordinarily proper parties to such a suit as this, and exceptions to the petition in intervention of the stockholders should have been sustained, in the absence of allegation that the defense would not be properly conducted by the defendant.

6. **Assignee's Right to Sue.**—Appellant was not an innocent holder of the thirty-two shares of stock owned by Corbin and Van Sickle, and acquired only their rights by his purchase, but he had the right to maintain this suit upon their written transfer of their stock.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Frank M. Spencer* and *Gresham & Jones*, for appellants.—1. The intervening shareholders of the defendant company are not proper parties, in the absence of allegation that the defendant company neglects and refuses to defend the suit, and the petition in intervention should have been dismissed. Evans v. Brandon, 53 Texas, 56; Bronson v. La Crosse R., 2 Wall., 283; Thomp. on Liability of Agts. and Off., 381, 382, 394.

2. The subsequent increase of the capital stock of appellee company, and the issuance of new certificates thereon, did not render appellant's stock liable to assessment or cancellation.

3. The old shareholders had a pre-emption right to the new shares when issued, but they were not compelled to take them, and upon declining to do so, they could be sold to new parties, and the money received should go into the company's capital, to be administered in the interest of all their associates. Appellee corporation could replenish its capital stock by the issuance and sale of additional stock, but it could not cancel appellant's stock without his consent. The new shares of stock did not differ from the old shares; each had paid $100 a share, and each represented an undivided interest in the corporate rights, privileges, and property. That is, each share represents a fractional interest in the entire corporate concern, and no special privileges or advantage can be given to the incoming members. " The sum is equal to its parts." 2 Mora. on Priv. Corp., sec. 110; Savings Bank v. Sachtleben, 67 Texas, 421; Moseby v. Burrow, 52 Texas, 403; 1 Mora., sec. 31; Cook on Stock and Stockh., sec. 189; 1 Mora., 208; 2 Mora., 643, et seq.; Bergman v. St. Paul B. Assn., 29 Minn., 275; 1 Mora. on Priv. Corp., 109, 111, 131, 287, 288, 305, 455; 2 Mora. on Priv. Corp., 826; Cook on Stock and Stockh., 241, 422, 469; Veeder v. Nudget, 95 N. Y., 295; Eidman v. Bowman, 58 Ill., 447; 31 Pa. St., 78; Ives v. Morrison, 31 Minn., 140.

Stockholder is not compelled to take the new shares. Angell & Ames on Corp., 554; Courier v. Lebanon State Co., 56 N. H., 262; Howell v. Railway, 51 Barb., 378.

4. The full par value of appellant's stock had been paid in, and he can not be made to pay any additional sum. The directors of the appellee company had no power to call in and cancel the stock sued on without the consent of the owner thereof. Authorities heretofore cited.

5. The plaintiff was entitled to recover the thirty-two shares of stock sued on, and to an order of the court commanding the appellee company to issue a certificate to him for that number of shares, the company not having exhausted their charter powers to issue stock.

6. If the court was without power to order the bank to issue to appellant a certificate for the thirty-two shares of stock sued on, then, under his alternative prayer and the proof, he was entitled to the highest market value of the stock from the day of conversion to the day of trial, as the measure of his damages. Act of incorporation, Laws of 1870, June 24, p. —; amended Dec. 1, 1871, p. 134; amended June 3, 1873, p. 802; Cook on Stock and Stockh., secs. 281–284 (and notes), 286; Bank v. Field, 126 Mass., 345; 1 Mora., 208–277; Strange v. Railway, 53 Texas, 162; Baker v. Wasson, 53 Texas, 151; Baker v. Wasson, 59 Texas, 140; Bayard v. Bank, 52 Pa. St., 234.

Measure of damages: Randon v. Barton, 4 Texas, 293; Calvit v. McFadden, 13 Texas, 325; Baker v. Wasson, 59 Texas, 145; Railway v. Bremond, 53 Texas, 96; Musgrave v. Beckham, 53 Pa. St., 310; Omera v. Mining Co., 2 Nev., 117.

*McLemore & Campbell* and *Finlay & Finlay*, for appellee.—1. The Island City Savings Bank being in an insolvent condition in January, 1885, had the right, through its directors, in good faith, to assign and transfer all of its property and assets, as in their judgment they deemed best for the interest of its creditors; and although a part of the contract of transfer and assignment may be ultra vires, to-wit, that part which provided for the surrender and cancellation of all the stock of the old stockholders, yet an acquiescence in said transfer, after notice of its provisions, for more than two years after its accomplishment, will operate as an implied ratification of said assignment, and a stockholder thus guilty of laches will be estopped from setting up the ultra vires of the transfer. 1 Morse on Banks, sec. 120; 2 Pome. Eq., secs. 819, 820; Wait on Insolv. Corp., secs. 41, 552, 623; Cook on Stock and Stockh., 648–667, 682–687.

2. The true measure of damages for wrongful conversion of stock is its value at the time of its conversion, or within a reasonable time thereafter. Cook on Stock and Stockh., secs. 581–583; 3 Am. State Rep., 169.

3. Leaving out all equities in the case, and waiving the question of estoppel, which is unanswerable, the plaintiff's measure of damages would be the proportional share of thirty-two shares as against 1000 new stockholders and 1141 old stockholders. The estimated value of the stock was made by witnesses on the basis of 1000 shares new stock. If the 1141 shares of old stock (which was surrendered to the new stock holders and now owned by them) should come in for a division, as Gresham is now seeking to have his thirty-two shares do, the value of the stock would be reduced more than one-half.

The jury found the value of the stock at $150 per share, and their calculation was as follows:

| | | |
|---|---|---|
| 32 shares of stock, at $150 ..................... | | $4,800 00 |
| Deduct $100 per share..........................$3,200 00 | | |
| Four years and six months interest at 8 per cent.. 1,152 00— | 4,352 00 | |
| | | |
| Amount of verdict................................... | $ | 448 00 |

WILLIAMS, ASSOCIATE JUSTICE.—Van Sickle and Corbin were stockholders in the Island City Savings Bank at the time of its suspension of business in January, 1885. After the failure of the bank a proposition was made to a meeting of its stockholders by S. Heidenheimer and others, which was, in substance, that if the owners of all of the stock of the bank would transfer and deliver to the signers of the communication all of the shares, and if the creditors of the bank would consent to accept 74 per cent of the amounts due them in full settlement, such signers would provide the sum of $100,000 for the purpose of carrying on the business of the bank, under a new organization and by the issuance of new stock,

under the charter of the bank, and would settle the debts on the proposed basis. It was also proposed, that ten days be allowed in which the stockholders and depositors might subscribe for the $100,000 of new stock, and that the proposers would take such balance as might be left untaken at the expiration of that time. By resolution this proposition was accepted by the unanimous vote of the meeting, at which more than three-fourths of the stockholders were present, and the directors were authorized to do all that was necessary to carry into effect the proposed arrangement. The resolution recited that the stockholders should surrender their certificates for such disposition as Heidenheimer and his associates might see proper to make, and directed that such stockholders deliver their certificates transferred in blank to the Island City Savings Bank, that they might thereafter be disposed of to carry out the object in view.

Thereafter, on February 21, 1885, the board of directors by resolution authorized the president and cashier of the bank to transfer and deliver to Heidenheimer and his associates all the property of the bank, in consideration of their undertaking to settle with the creditors.

The property was in fact delivered to the subscribers of the proposition and they discharged the debts, raising $22,000 as a donation to aid in so doing, the assets lacking that amount to pay 74 per cent of the liabilities. All of the old stockholders, except Corbin, Van Sickle, and one other, surrendered their stock as contemplated by the proceedings. One thousand shares of $100 each of what is called the new stock were issued, some of which were taken by old stockholders and the remainder by others. The holders of this new stock assumed control of the bank, treating it as the only stock of the corporation entitled to recognition.

On March 10, 1885, the directors of the bank, by resolution, undertook to make an assessment of $100 on each share of the original stock, and declared that unless payment thereof was made in thirty days by the owner of said stock, it should be thereafter forfeited, and new stock was authorized to be issued and sold in lieu thereof. Notice was given to Corbin and Van Sickle of this action. Neither of them was present at any of the meetings, and never in any way consented to or ratified the action of the other stockholders and board of directors. They had paid in full for their stock, and advanced no additional sum and took none of the new shares. The charter of the organization authorized its capital stock to be increased to $200,000.

Before the proceedings above recited there were 1141 shares of $100 each, all of which had been fully paid for. Corbin and Van Sickle, in 1889, transferred their certificates to appellant. He made demand of the defendant company for the transfer to be made upon the books and for recognition as a shareholder. This was refused, and he brought this suit

to compel the bank to execute such transfers and to reinstate him as a stockholder; and in case that could not be done, to recover damages for the conversion of his stock. The defendant answered, and all of the holders of new stock intervened, setting up the proceedings above stated in bar of the action.

The court below instructed the jury to find for appellant the highest market value of thirty-two shares of stock between the time of conversion and the trial, and to deduct therefrom $100 per share, with interest from 1885, in order to put him on an equal footing with the intervenors. The jury found for appellant $448.

We think it clear that the actions taken by the stockholders and directors of the bank did not have the effect to cancel the stock held by Corbin and Van Sickle. Without their consent their shares could not be thus forfeited. 1 Mora. on Priv. Corp., 208.

Having paid the par value of the stock, it was not subject to further assessment for any purpose. Id., 131.

The existence of the corporation, with the powers conferred by its charter, continued, notwithstanding the insolvency of the bank and its consequent suspension of business, and the legal rights of individual shareholders could not be taken from them by the majority, however large, and the attempt of such a majority was beyond the power of the corporation. Bank v. Sachtleben, 67 Texas, 425.

The shares upon which this suit is based, therefore, continued in full force, notwithstanding the declaration that they were worthless and would be considered cancelled.

By the arrangement, however, between the promotors of the new organization, if such it may be called, and those shareholders who assented to the proposition made to them and surrendered and transferred their stock, the former acquired all the rights which such stock represented; and in order to arrive at the right of appellant it is necessary to take the old stock thus transferred into consideration. For it can hardly be contended that by such transfer and surrender Corbin and Van Sickle acquired any additional interest in the concern. It seems equally true that they are not entitled to be placed upon an equal footing with the holders of new stock; for these acquired all the rights of the other old stockholders and contributed $100,000 to the capital stock with which the business was resumed. Thus the new shares when issued represented both the rights of the old stockholders who transferred their shares, and those acquired through the new subscription. Counsel for appellant, in their brief, treat the issuance of the new certificates as being, in legal effect, an increase of the capital stock under the power given in the charter; and for the purpose of ascertaining the relative rights of appellant and other stockholders, this seems to us the true light in which to regard it. But if we should hold that appellant's shares are equal to the others, this

would give to the transaction the effect of a reduction of stock; for there would then be only 1036 shares of $100 each, whereas there were formerly 1141 shares of the same denomination.

It is evident that the purpose of the negotiation was that Heidenheimer and those acting under him should secure all the rights of the old stockholders, and also an interest equal to their subscription of $100,000. They did acquire the interest of all holders of stock who assented. The new stock was then issued to represent all of the rights which thus arose.

This was binding on the holders of the old stock who gave their assent, creditors were all satisfied, and the rights of Corbin and Van Sickle were therefore as 32 to 2141.

It is true, if 1000 shares in addition to 1141 had been actually issued, this would exceed the maximum limit fixed by the charter for the capital stock. This was not really done. By the consent of all persons concerned, but the three nonassenting members, the stock was fixed at $100,000, represented by 1000 shares. It is necessary to ascertain the proportionate interest which appellant's stock continued to represent as against the holders of the new stock, and this is arrived at in the way indicated.

The questions remain, Is the appellant still in an attitude to maintain his right as a stockholder, and if so, what relief should be granted to him? Appellee contends that appellant's assignors should be held to have acquiesced, by their delay to sue, in the action by the stockholders and directors. They did nothing affirmatively showing an intent to do so. The acceptance by Corbin of the money paid him as a creditor of the bank can not be held to have such effect. The nature of the demand made upon them was such as to call for positive action, rather than mere silence, to signify assent to the transaction. Their failure to transfer and surrender their stock prevents any inference of acquiescence from their silence. As to their failure to sue, the statute of limitations prescribes the time which would constitute a bar. The well settled principles of equity, by which a party may be precluded by laches from attacking unauthorized acts of a corporation of which he is a member, do not apply to the facts of this case. Because of such delay, however, if for no other reason, we think the aid of equity to reinstate him in the enjoyment of the privileges of a stockholder should be withheld. The managers of the bank have been allowed to go on and establish its organization in accordance with the arrangements made in 1885; the business of the bank is doubtless readjusted to the conditions arising out of them. The consequences of forcing appellant into the corporation as a shareholder upon the basis of his right, as we find it to be, may not be easily foreseen. He can be compensated in money for any damages which he has sustained, and we think, under the circumstances, that should be his remedy. The measure of damages should be the value of the stock, treating it as 32

shares in 2141, at the time of its conversion, with legal interest thereon to the date of trial.

A majority of the court hold, that under the facts of this case, such conversion took place at the date of demand by appellant for recognition as a stockholder and the issuance of certificates to him, and the refusal of defendant to accord to him such right. The value at that time should be ascertained and form the basis of recovery at another trial. Cook on Stock and Stockh., sec. 581, and notes.

Plaintiff's exceptions to the plea of intervention should have been sustained, in the absence of allegations showing that the defense would not be properly conducted by the defendant. The stockholders are not ordinarily proper parties in such a case.

From what we have said, it follows that the court should have sustained plaintiff's exceptions to the third and fourth subdivisions of defendant's answer, in which the resolutions of the board of directors attempting to assess and cancel the stock were relied on as a bar to the action. The defendant, however, adopted the plea of intervenors, and the proceedings of the stockholders' meeting therein set up, showing the proposition of Heidenheimer and others, and its acceptance, while constituting no bar to the suit, are proper to be considered in determining the rights thereby acquired, as we have defined them, as are all other facts affecting that question.

Upon the written transfers of the stock appellant was entitled to maintain the action. He acquired only such rights as his assignors had, and he can not be considered an innocent purchaser. Evidence therefore as to the agreement with his assignors, under which he acquired the certificates, under present issues, would be immaterial.

While we have not followed in their order and in detail the points raised in the briefs, what has been said disposes of all questions necessary to a decision. The judgment will be reversed and the cause remanded, in order that inquiry may be made as to the value of the stock at the date of conversion as above indicated. That seems to be the only issue that needs to be submitted to the jury.

*Reversed and remanded.*

Delivered January 19, 1893.