MUTUAL LOAN & INVESTMENT CO. v.
MATTHEWS. (No. 7176.)

(Court of Civil Appeals of Texas. Dallas.
April 17, 1915. Rehearing Denied May 29, 1915.)

1. PRINCIPAL AND AGENT ☞47 — DUTY OF PRINCIPAL — STATEMENT OF INDEBTEDNESS TO AGENT.

Where a principal refused to give its agent a statement of the amount which it owed him on a certain sale of stock negotiated by him, whereby the agent, being unable to give satisfactory proof to a prospective purchaser of his interest in the note which the buyer of the stock had given to secure the price thereof, lost such prospective sale of his equity in such note, the facts gave rise to no right of action in the agent against the principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 76, 79; Dec. Dig. ☞47.]

2. PRINCIPAL AND AGENT ☞82 — AGENT'S COMPENSATION—JOINT INTEREST IN NOTES.

Where plaintiff agreed to sell stock for the defendant, the contract providing that he should receive "15 per cent. commission on all sales made by him in cash or notes as obtained on said sales," the plaintiff thereby became the joint owner with his principal, to the extent of a 15 per cent. interest, in notes which he took covering the price of stock sold by him.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 216–219; Dec. Dig. ☞82.]

3. TROVER AND CONVERSION ☞17—ACTS CONSTITUTING.

Where plaintiff agent agreed to sell stock for the defendant company, and to accept, as compensation, 15 per cent. of the cash or notes which he might secure for such stock, and where he negotiated a sale of such stock, taking notes to cover the purchase price, which the defendant immediately turned over to the company, whose stock had been sold to liquidate its (defendant's) separate obligation to such company, together with the shares of stock bought, which were hypothecated with the defendant by the buyer of the stock to secure the payment of the notes, the action of the defendant amounted to a conversion of plaintiff's interest in such notes and security, rendering the defendant personally liable therefor.

[Ed. Note.—For other cases, see Trover and Conversion, Dec. Dig. ☞17.]

4. TROVER AND CONVERSION ☞50—CONVERSION OF NOTES—MEASURE OF DAMAGES.

Where plaintiff negotiated a sale of stock for defendant, agreeing to accept as compensation a 15 per cent. interest in the purchase-money notes, and such defendant, the buyer being solvent, transferred such notes to the company, whose stock was sold, in order to liquidate its own debt to such company, the measure of plaintiff's damage for such conversion of his interest in the notes was 15 per cent. of their face value.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 266; Dec. Dig. ☞50.]

5. TROVER AND CONVERSION ☞22—RETURN OF PROPERTY.

Where the defendant converted notes, in which plaintiff held a 15 per cent. interest, by transferring them to liquidate its individual debt, the subsequent return of such notes by the transferee did not render the initial act any the less a conversion, or destroy plaintiff's right of action.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 152–162, 167–169; Dec. Dig. ☞22.]

6. TROVER AND CONVERSION ☞50—CONVERSION OF NOTES—JUDGMENT.

Plaintiff negotiated a sale of stock under an agreement that he was to receive therefor a 15 per cent. interest in the purchase-money notes. His principal took such notes and the stock for which they were given, pledged by the purchaser to secure the notes, and transferred them, to the company whose stock was sold, to liquidate its own indebtedness to such company. Thereafter, upon the insolvency of the purchaser of the stock, the company returned such notes to the defendant, but retained the stock, the value of which largely exceeded plaintiff's interest in the notes. Plaintiff sued his principal, the transferror of such notes, for their conversion. Held, that judgment for plaintiff for his 15 per cent. interest in the face of the notes, less any credit in favor of the buyer through dealings between such buyer and the plaintiff individually, was proper.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 266; Dec. Dig. ☞50.]

7. TROVER AND CONVERSION ☞32—ACTION—PLEADING.

In an action for the conversion of notes, where the petition charged that, after the plaintiff delivered to the defendant notes which he had secured from a buyer of stock, in the sale of which he was acting as agent for defendant, to secure the price thereof, such defendant transferred to another two of the notes, together with attached collateral and dividend agreements, in accordance with its own schemes and plans, and in defraud of plaintiff's rights, and without his knowledge or consent, to his damage in a certain sum, such allegation, unattacked by demurrer, was sufficient to raise the issue that the defendant had thereby converted the notes and the shares of stock, in which plaintiff held a 15 per cent. joint interest as commission, to its own use.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 191–202; Dec. Dig. ☞32.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by O. N. Matthews against the Mutual Loan & Investment Company. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellant. Lawther, Pope & Mays, of Dallas, for appellee.

TALBOT, J. On the 19th day of November, 1910, appellee entered into a contract in writing with the appellant, a copartnership composed of W. J. Carden and others, which, omitting immaterial parts, is as follows:

"That O. N. Matthews, of Dallas, Texas, is hereby authorized to sell stock of the Western Casualty & Guaranty Company at twenty ($20.-00) dollars per share, until further notice. It is further understood that O. N. Matthews shall sell said stock for cash or to good, responsible people, on time, but the last payment must mature by or before November 31, 1911. It is further understood that O. N. Matthews shall receive fifteen (15) per cent. commission on all sales made by him, in cash or notes as obtained on said sales, and shall make no representations in making said sales not authorized by the written or printed literature emanating from this office."

Thereafter, in August, 1911, the appellee, acting under and by virtue of said contract

sold to Duke Phillips, of Greenville, Tex., 500 shares of stock of the said Western Casualty & Guaranty Company, at $20 per share; the said Phillips executing therefor his three promissory notes, one for $2,500, and two for $3,750 each, payable to the order of the appellant, the Mutual Loan & Investment Company. At the time of the taking of said notes, the appellee, under instructions from the appellant, required Phillips to execute a collateral agreement, whereby the shares of stock so sold were to be held by appellant as security for their payment. Appellee about said time also secured from Phillips, as required by appellant, an agreement providing that certain dividends arising on said stock should be applied as payments on said notes. The said notes and agreements were then, after appellant investigated and satisfied itself of the solvency of the said Phillips, delivered to appellant. Immediately after receiving these notes and the collateral agreements hypothecating the $10,000 worth of stock and all dividends to be declared thereon as security, the appellant, without the knowledge or consent of the appellee, separated the notes and transferred to the Western Casualty & Guaranty Company the two $3,750 notes, together with the collateral agreements, and retained possession of the $2,500 note without holding any of the security therefor. Matthews had no connection whatever with the Western Casualty & Guaranty Company, and knew nothing whatever of the connection between the Mutual Loan & Investment Company and the Western Casualty & Guaranty Company, and did not know, at the time Phillips executed and delivered the notes and the collateral agreements, that they were to be transferred to the Western Casualty & Guaranty Company. When appellant turned the two $3,750 notes and the collateral and dividend agreements securing them over to the Western Casualty & Guaranty Company, the Western Casualty & Guaranty Company released the defendant of an obligation to the extent of $7,500.

Appellee testified:

"I have sold other stock of the Western Casualty & Guaranty Company for the Mutual Loan & Investment Company. The value of the stock was $20 per share. The Mutual Loan & Investment Company has never paid me any commission on this sale (sale to Phillips). I have requested them to do so. * * * There was a general understanding that I was to go out and sell this stock and was to receive 15 per cent. commission according to the terms of the written contract. I never agreed or consented for the Mutual Loan & Investment Company to take the stock and the collateral security and attach the same to the two $3,750 notes, thereby securing the said two notes, and turn the said two notes over to the Western Casualty & Guaranty Company, leaving the $2,500 note unsecured. Neither did I agree to realize my commission out of the $2,500 note. I had no idea that they would do this. Duke Phillips was financially solvent at the time of the sale of the said stock. I do not know what his financial condition is now, but I understand that he is not now solvent."

Appellee further testified that, when he turned the notes and collateral agreements over to the appellant, that was all he had to do with the transaction until the time he demanded his commission; that he had always contended that he had a 15 per cent. interest in all three of the notes; and that his understanding was that the stock would be attached to all of Phillips' notes to secure their payment. In October, 1911, appellee borrowed from the State Bank at Greenville $350, and executed his note therefor with the said Duke Phillips as indorser. At the time of borrowing this money, appellee had an understanding with Phillips and the bank that Phillips was to pay the note when it became due, and that he (appellee) was to give Phillips credit for the amount thereof on the commission appellee was to receive for negotiating the sale of the stock. Appellee then told appellant to give Phillips credit for $350, and the interest which was $5 and this was done. When appellee's note to the bank at Greenville matured, Phillips did not pay it, and appellee requested the appellant to erase the credit of $355, which had been given Phillips. This appellant would not do, and, at the time of the trial of this case, the Greenville bank still held appellee responsible on the note. The $355 mentioned was credited by appellant on the $2,500 executed by Phillips, and at the time of the trial of this case had not been erased. Appellee further testified:

"On or about October 20, 1911, I had an opportunity to sell my equity in the Phillips notes. At that time I thought my equity amounted to $1,145. I thought Phillips would pay the $355 note. I went to Mr. Brickel, who was sales manager for the Mutual Loan & Investment Company, and told him that I had an opportunity to sell my interest in this Duke Phillips sale, and asked him to give me a written statement showing that I had $1,145 coming to me; and he said that, while I had such interest, he could not give me such statement, because it was not safe. He said that the company might get involved in the matter, if he should give such statement. Being unable to get the statement, I was unable to sell my equity. I was intending to sell this equity to Mr. C. D. Caldwell."

The shares of stock purchased by Duke Phillips had not in fact been issued when his notes therefor and the collateral agreements were executed and delivered to appellant. The parties, however, dealt with each other, and the transaction in question was consummated as though the stock had been issued; and, when Phillips' notes and said agreements were delivered to the Western Casualty & Guaranty Company, that company issued the 500 shares of stock and attached them to the two $3,750 notes and held said notes as its property and the shares of stock as collateral security for their payment. This was in accordance with the contract and agreement which existed between the appellee and said company. The Western Casualty & Guaranty Company retained the dividends which were earned by the stock and delivered no part of the same to either Phil-

lips, the appellant, or to appellee. Phillips became absolutely insolvent and failed to pay either of the notes given by him for the stock or any part of them. After demand therefor and the refusal of appellant to pay his commission, appellee instituted this suit, and Phillips being insolvent, and failing to pay the two $3,750 notes held by the Western Casualty & Guaranty Company, that company charged the amount of said two notes back to the appellant, returned to it said notes and the collateral agreements, but retained the shares of stock.

Appellee's petition charges, in substance, that the defendants had wrongfully converted the Duke Phillips notes and security attached thereto to their own use, and without his knowledge and consent, and in fraud of his rights, and in accordance with their own schemes and plans had transferred said notes and security, to his damage in the sum of $1,-500, and. by separate count alleging that he had been damaged by reason of the failure of the defendant to give him a statement of his interest in the notes or of his equity in the notes when he had an opportunity to sell his equity therein, and praying for a judgment for $1,500 and interest. Appellee further alleged that, by reason of the sale, he became entitled to his commission of $1,500 either in cash or notes under the terms of the contract.

The defendant answered with general and special demurrers, and admitted that appellee had entered into the contract pleaded by him and had made such sale and procured said notes, but set forth that appellant was, by virtue of other verbal agreements alleged to have been made by them with the appellee, to receive his commission out of the $2,500 note, which was to be an unsecured note. Defendant further alleged that plaintiff was well acquainted with their relations to the Western Casualty & Guaranty Company, and that he agreed to the transfer by the defendants of the two $3,750 notes and the collateral to the Western Casualty & Guaranty Company. At the time the case was tried, the notes were past due, and Phillips was insolvent. Appellant contended that appellee simply had an interest to the extent of his commissions in the $2,500 note, but during the trial agreed that appellee might have a judgment establishing his interest of 15 per cent. in all the notes. Such a judgment appellee refused, and insisted that he have a money judgment for the amount of his commissions.

The case was submitted to the jury on special issues, and their findings were: (1) That appellee, under the contract with appellants, was to have his commission interest in all the notes; (2) that appellee's commission was earned and due when the notes of Phillips were accepted by appellants; (3) that appellee did not understand and agree that the two $3,750 notes and their security should be delivered by appellant to the Western Casualty & Guaranty Company to be held by that company until said notes were paid; (4) that, by the action of the appellants, appellee was prevented from negotiating his interest in any of said notes; and (5) that the written contract was the only agreement made at the time.

Upon the return of these findings by the jury, judgment was entered in favor of the appellee against appellants for the sum of $1,697, being the sum of $1,500, with interest added. From this judgment, the appellants prosecute this appeal.

Appellant's assignments of error need not be stated and discussed seriatim. The propositions contended for are, in substance: (1) That in view of the undisputed evidence and findings of the jury to the effect that the written contract in evidence was the only contract between the parties, and that appellee's commission interest under the terms of said contract was in all the notes executed and delivered by Duke Phillips, and that said interest was created and became vested when the notes were accepted, and that appellee did not agree for the two $3,750 notes, with the collateral security given to secure their payment, to be transferred by appellants to the Western Casualty & Guaranty Company, the only proper judgment that could be rendered was one in favor of appellee establishing his interest of 15 per cent. in all of said notes; (2) that the refusal of appellants to give appellee, upon his request, a statement in writing showing that appellee had an interest of 15 per cent. in the notes executed by Duke Phillips, whereby appellee was prevented from making a sale of such interest to C. D. Caldwell, gave appellee no cause of action against appellants for the damages alleged to have been sustained by him as a result of such refusal, and hence such conduct on the part of appellants furnished no basis for the judgment rendered.

[1] Addressing ourselves to these propositions in inverse order, we do not hesitate to say that we think the second correct. The appellants were under no legal duty to give the statement requested by appellee; and even though he may have lost an opportunity to sell his interest in the notes in question and suffered damages in consequence of the refusal to give it, yet no right of action, either in law or equity, arose for the recovery of such damages. No contractual duty rested upon appellants to give the statement, and their action in refusing it cannot be classed as tortious. It therefore follows that a suit for the damages, flowing from such conduct, cannot be maintained.

[2-6] The first proposition is fraught with more difficulty, but we have reached the conclusion that it should not be sustained. We do not think appellee, under the terms of his contract, had a money demand against appellants for his commission upon the acceptance of the notes executed by Phillips. On the contrary, we think the terms of his

contract are unambiguous and clearly show that in the event he took the notes of a purchaser for stock sold, which were accepted by appellants, he and appellants became the joint owners of such notes; his interest therein being measured by the amount of the commission he was to receive for his services in making the sale. In the transaction with Duke Phillips, out of which this litigation grows, notes were taken for the entire contract price for the stock sold to him, and appellee became the owner of a 15 per cent. interest in all of said notes, with all the rights of such owner to have the shares of stock, which were hypothecated with appellant by Duke Phillips to secure the payment of said notes, preserved and appropriated, so far as necessary for that purpose, to the payment of appellee's interest therein. But appellants, without the consent of appellee and without his knowledge that it was going to be done, transferred the two $3,750 notes, together with said security, without any reservation whatever of appellee's interest in said notes and security, to the Western Casualty & Guaranty Company to liquidate pro tanto an indebtedness due by them to that company. This was, we think, such a wrongful conversion of appellee's interest in said notes and security as rendered appellants liable to him personally therefor. Appellants being so liable at the date of the institution of this suit, appellee, under the pleadings and evidence, was entitled to a money judgment against them for the amount of the interest he then had in said notes. Phillips was solvent when appellants transferred the notes to the Western Casualty & Guaranty Company, but subsequently, and before the trial of this case, became insolvent, and the measure of damages in such case is the amount prima facie due on the face of said notes. Ramsey v. Hurley, 72 Tex. 200, 12 S. W. 56. The fact that the notes transferred to the Western Casualty & Guaranty Company were subsequently returned to appellants does not alter the case. They were not returned until after the insolvency of Phillips and the institution of this suit, and the shares of stock hypothecated to secure the payment of said notes and the $2,500 note heretofore mentioned, and which were when so hypothecated, and also at the time of the trial of this case, worth $20 per share, were not returned, but were retained by the Western Casualty & Guaranty Company. It is a well-established principle of law that, when a man's personal property has been wrongfully converted by another, the wrongdoer cannot escape liability for the value of the property by offering to return it, but the injured party may have his action against him for the value thereof. This principle is applicable here, but whether it is or not the conversion by appellants of the collateral security given for the payment of the notes in question, the value of which was largely in excess of appellee's interest in said notes, entitled appellee, under the findings of the jury and undisputed evidence, to a judgment for such interest. The interest, however, of appellee, in the notes, at the time of the trial, was less than the amount of the judgment rendered. The undisputed evidence shows that appellee, upon his note indorsed by Duke Phillips, borrowed from the State Bank at Greenville $350; that, at the time this money was so obtained, appellee agreed with Phillips, evidently in consideration of his indorsement, to give him credit for such amount on his commission interest in the notes executed by Phillips for the stock purchased by Phillips; and that such credit, together with the additional sum of $5, as interest, and at the instance of appellee, was indorsed by appellants on the $2,500 note. This reduced the interest of appellee in said notes $355, and judgment should have been rendered in his favor for the amount of his original interest, less the said $355. The fact that Phillips failed or refused to pay the note to the Greenville bank according to the understanding between him and appellee did not give appellee the right over the protest of appellants, especially without Phillips' consent, to erase or have erased the credit of $355 which had been given Phillips on his notes. This error in the judgment of the lower court does not, however, require a reversal of the case, but it may be cured by a reformation of said judgment in this court.

[7] The contention that the issue of conversion of the notes and security for their payments was eliminated by the action of the court in sustaining a demurrer urged by appellants to the seventeenth paragraph of appellee's petition is not, we think, supported by the record. In the twenty-eighth paragraph of his petition appellee charges, among other things:

"That he verily believes, and so alleges, that the said defendant, shortly after the three notes were delivered to it, transferred two of the said notes, together with the attached collateral and dividend agreements to other persons, in accordance with their own schemes and plans and in fraud of plaintiff's rights, and without his knowledge or consent, to his damage in the sum of $1,500, with interest at the rate of 6 per cent. per annum from 28th of August, 1911."

No demurrer was leveled at this paragraph of the petition, and it was sufficient to raise the issue that appellants had converted the two $3,750 notes and the shares of stock in question to their own use.

The judgment of the district court will be reformed by deducting therefrom the sum of $355, erroneously included therein, as above indicated, and, as reformed, will be affirmed.