THRIFT OIL & GAS CO. NO. 2 v. NEWTON.
(No. 1736.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 5, 1921. Rehearing Denied Feb. 2, 1921.)

1. Joint-stock companies ⬥⬥6 — Measure of damages for association's breach of contract to sell stock stated.

Where a joint-stock association which had agreed to sell to plaintiff a share of its stock for a $100 Liberty Bond for $100 par value returned the bond, plaintiff's measure of damages was the value of the stock at the time of defendant's breach, and not the difference between the contract price and the highest value of the stock between the dates of breach and trial.

2. Joint-stock companies ⬥⬥6 — Association's breach of contract to sell its stock held not a conversion.

Where plaintiff contracted with an unincorporated joint-stock association for $100 par value of its stock in exchange for a $100 Liberty Bond which the association returned, plaintiff's acceptance of such return would preclude him from treating the action as a conversion of his stock which had never been delivered.

3. Joint-stock companies ⬥⬥6—Damages for seller's breach based on value at place of sale.

In an action against a joint-stock association for breach of contract for sale of its stock, the proof should be of its market value at the seller's location or the place of delivery, rather than the published market quotations of another place agreed upon by the attorneys of the respective parties.

On Motion for Rehearing.

4. Joint-stock companies ⬥⬥6 — Measure of damages for breach of stock sale contract, where bond given in payment is returned, stated.

Where defendant committed a breach of contract to sell its own stock returning plaintiff's Liberty Bond which it had agreed to accept, plaintiff was in the same condition as if he had never delivered the bond and could recover the difference between the value of the bond and the value of the stock at the time of the breach, but the bond's depreciation would not warrant his recovering the highest price of the stock between dates of breach and trial.

5. Joint-stock companies ⬥⬥6—Acceptance of return of payment for stock held to limit its remedy to action for breach of contract.

Where defendant had agreed to accept from plaintiff a Liberty Bond in payment for its own stock and the defendant committed a breach of the contract, plaintiff's acceptance of the return of the bond put an end to his right for specific performance or to treat the transaction as a conversion of the stock; his remedy thereafter being only in damages for breach.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Suit by J. C. Newton against the Thrift Oil & Gas Company No. 2. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Roscoe Wilson, of Lubbock, and Weeks, Morrow, Francis & King, of Wichita Falls, for appellant.

R. A. Sowder, of Lubbock, for appellee.

BOYCE, J. On December 10, 1918, the appellee, J. C. Newton, made application to the Thrift Oil & Gas Company No. 2, an unincorporated joint-stock association, for the purchase of a share of the stock of said association, of the par value of $100, agreeing to pay therefor one $100 Liberty Bond of the Fourth Issue. The bond had been subscribed and fully paid for through the Security State Bank & Trust Company of Lubbock, Tex., but at the time of the application had not been received by the said bank, it being expected that the bond would be in the hand about January 1, 1919. The oil and gas company accepted an order on the bank for the delivery of the bond to it when received by the bank. The bond was received some time in the early part of January, 1919, and mailed to the Thrift Oil & Gas Company No. 2 on January 8, 1919, as had been directed by said company in its acceptance of the application and the order. The bond was returned by the association to the bank within about a week and was soon thereafter sold by the appellee at something less than par, from $96 to $97.50. On March 26, 1919, said Newton filed suit in the county court of Lubbock county for damages for the breach of said contract, alleging that the value of the stock at such time was $200. Said suit was later dismissed and this suit filed in the district court of Lubbock county, on the 13th day of May, 1919, in which it was alleged that the market and actual value of the share of stock in said association was at said time the sum of $2,000, and plaintiff prayed for damages on such basis. On the trial plaintiff offered evidence which the trial court held admissible, under an agreement hereinafter mentioned, to establish the value of the stock and from which it appeared that on April 30, 1919, the value of one share of said stock was $950 and on May 9, 1919, $1,550. The court instructed the jury to find for the plaintiff in the sum of $1,500 and rendered judgment on the verdict for such amount, and this appeal is from this judgment.

[1] The judgment was based on the theory that plaintiff was entitled to recover damages measured by the highest value of the stock shown to have obtained between the date of the breach of the contract and the time of the trial, and the principal question in the

⬥⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

case is as to whether this measure of damages is applicable in this instance. The Texas courts, at an early day, approved the rule that the vendee, on breach by the vendor of a contract for sale of personal property, where he had paid the purchase price in advance, might recover as damages the difference between the contract price and the highest value of the property between the date of breach and the trial, provided the suit was brought within a reasonable time; and this rule has been followed by later decisions. Randon v. Barton, 4 Tex. 290; Calvit v. McFadden, 13 Tex. 324; Heilbroner v. Douglass, 45 Tex. 402; S. A. & A. P. Ry. Co. v. Wilson, 23 S. W. 282; Johnson v. Miller, 163 S. W. 593. The appellant contends that the rule should not be applied in this case because the reasons for the rule do not exist in a case where the consideration was returned to and accepted by the vendee. So far as we are informed, the very question presented by this contention has not been decided by the courts of this state or any of the other courts that adhere to this rule of damages, so it becomes necessary to consider the authorities which announce this principle at such length as may be necessary to determine the reasons upon which the rule is founded and whether they are so applicable to the facts of this case as would justify us in applying the rule here.

In Randon v. Barton, 4 Tex. 290, the question arose on a contract for the sale of land certificates, where the purchase price was paid in advance. The suit was for specific performance and damages in the alternative. The court, in the course of its reasoning in favor of rule of highest value, argues that the plaintiff would have a right to specific performance if the defendant were in position to deliver the certificates and that if the defendant, by his wrong, is not able to do this, such inability ought not to avail him, but that he should make such compensation as would completely indemnify the plaintiff by enabling him to go into the market at the time of the trial and purchase the certificates which defendant had agreed to sell him. In the course of the opinion the court quotes the following from an English decision [Shepherd v. Johnson, 2 East, 211]:

"The true measure of damages, in all these cases, is that which will completely indemnify the plaintiff for the breach of the engagement. * * * Suppose a bill were filed in equity for a specific performance of an agreement to replace stock on a given day, which had not been done at the time; would not a court of equity compel the party to replace it at the then price of stock, if the market had risen in the meantime?"

In Calvit v. McFadden, 13 Tex. 324, the reason given for the court's adherence to the rule is that the vendee, by paying the purchase price in advance, has thereby diminished his ability to go into the market and procure the property in satisfaction of the contract. Both of the cases refer as authority to the case of Clark v. Pinney, 7 Cow. (N. Y.) 681, which is one of the earliest and the leading American case applying this rule of damages. This case relies on certain English cases for authority, in support of the rule. We do not have access to the English cases referred to, but must depend on the New York case for our knowledge of the facts and holdings therein. We will refer briefly to some of these. In the earliest case referred to, Shepherd v. Johnson, 2 East, 211, the action was on a bond for the replacement of stock which had been loaned by the plaintiff to the principal in the bond under agreement for return at a certain time, and it was held that the plaintiff was entitled to recover the value of the stock on the day of the trial. In the case of Gainsford v. Carroll, 2 Barn. & Cres. 624, the suit was for a breach of a contract for the delivery of a quantity of bacon. The plaintiff had not paid the purchase price in advance but claimed, under the authority of the stock case already referred to, and other cases following, it as his measure of damages, the difference between the contract price and the price on the day of the trial. "But it was answered by the court that these cases did not apply. That in the case of a loan of stock the borrower holds in his hands the money of the lender and thereby prevents him from using it for the purpose of replacing the stock, but in the case of a purchaser of goods the vendee is in possession of his money and he has it in his power, as soon as the vendor has failed in the performance of his contract, to purchase other goods of a like quantity and description, and if he has sustained any loss by neglecting to do so, it is his own fault." This line of reasoning is taken by the New York court to be a recognition of the principle and an intimation that it would be applicable if the consideration for the bacon had been paid in advance. Said court, in discussing the case of Gray v. President Portland Bank, 3 Mass. 364, 3 Am. Dec. 156, where no payment had been made for the stock contracted for and which contract was made the basis of the action, and distinguishing said case from those cases where payment was made in advance, says:

"In that case, Mr. Gray had not paid his money for the stock which the defendants refused to transfer to him. He was legally entitled to the stock, and therefore, in judgment of law, the defendants had promised or undertaken to transfer it. But he had not paid them for it in advance. He had not loaned it to them on contract to retransfer it by a given day. He had, therefore, parted with nothing which could be supposed to have incapacitated him to purchase an equal quantity of stock on the very day when the defendants refused him this."

The court further, in the discussion, states that, where the chattel is not of a fixed and determinate value, damages are not in all cases of conversion confined to its worth at the time of the conversion, "but may be enhanced according to its increased value subsequent to that time."

It will be seen that in these cases two conditions occur: First, the plaintiff showed a continuing right to demand possession of the property up to the time when the damages were allowed; such as would entitle him in a proper case to a specific performance of the contract and delivery of the property itself; and, second, by the payment of the consideration in advance, was presumed to have incapacitated himself from purchasing the property on breach of the contract so that it would be inequitable to measure his damages as of that time, the plaintiff not being in position to minimize his loss by replacing the goods, which he had the right to demand of the defendant. Neither of these conditions are present in this case. As to the first, the defendant repudiated and breached the contract when it returned the Liberty Bond. The plaintiff, in receiving the bond, accepted the repudiation. The contract, so far as any further right of either party to thereafter perform or demand the performance of the same, was at an end. Greenwall Theatrical Co. v. Markowitz, 97 Tex. 479, 79 S. W. 1071, 65 L. R. A. 302; Johnson v. Miller, 163 S. W. 593 (2 and 3); Texas Seed & Floral Co. v. Chicago Set Seed Co., 187 S. W. 747; L. S. & M. S. R. R. Co. v. Richards, 152 Ill. 59, 38 N. E. 773, 30 L. R. A. 33; Page on Contracts, 1434; Elliott on Contracts, pars. 2028 and 2033. It is true that these authorities deal largely with an anticipatory breach by renunciation before time for performance. But the principle, so far as determining whether the parties had any continuing rights under the contract, would be the same, whether the breach is anticipatory or at the time when performance is due. When the plaintiff accepted the bond and sold it there was an election to treat the contract as breached and as at an end, and he could not thereafter have sued for specific performance and delivery of the stock if the contract were one in which specific performance would, in any event, have been decreed. His action then was for damages for the breach, and as said by the Massachusetts court, in the case of Gray v. Portland Bank, supra:

"Then it was that the injury by the defendants was complete, and then the plaintiff might have determined the extent of his loss, by a purchase of the number of shares denied him, at the expense of the advance upon them; which being reimbursed in this action, affords him a satisfaction and indemnity equivalent to a specific relief."

As to the second condition, when the contract was breached and the consideration returned and accepted, the plaintiff was precisely in the same condition of ability to purchase stock in lieu of the stock which the defendant was to deliver him, as he would have been if he had not delivered the bond to the defendant in the first instance, and we see no reason for applying a different measure of damages in the two cases, though we have been referred to no authority directly on this point. In the case of Worthen v. Wilmot, 30 Vt. 555, where a part of the purchase price of the goods was paid in advance and this was returned to the vendee, at the time of the breach, it was held that these facts were insufficient to bring the case within the rule allowing the application of the measure of the highest price, and some mention is made of the fact that the money paid was returned and accepted, though it may be inferred that the court would have held that even a part payment not refunded would not bring the case within the rule.

It was recognized by our Supreme Court, in the case of Heilbroner v. Douglass, 45 Tex. 407, that the measure of damages announced in Randon v. Barton, and Calvit v. McFadden would not be applied indiscriminately in cases where the justice of the case does not demand it. The rule itself has been rejected by perhaps the greater weight of American authority and seems to have been modified to some extent by the New York courts, and we take it that the courts of this state will not be disposed to apply the rule in cases where the reasons which induced its application in the first instance do not obtain. Our conclusion is that the court erred in applying the rule in this case and that the plaintiff's damages should be measured by the value of the stock at the time of the breach of the contract; that is, when the Liberty Bond was returned to plaintiff.

[2] We are not inclined to think that the plaintiff could be properly said to have become a stockholder in the association and that he would have the right to treat the action of the association as a conversion of his stock, as we believe the acceptance of the return of the bond would preclude him from taking this position. Johnson v. Miller, supra. But, even if the transaction is to be regarded as a conversion, then the measure of recovery, according to the decisions of the courts of this state that have passed on the question, would be the value of the stock at the time of the conversion. Gresham v. Island City Savings Bank, 2 Tex. Civ. App. 52, 21 S. W. 556; Rio Grande Cattle Co. v. Burns, 82 Tex. 50, 17 S. W. 1046 (4). However, we need not determine whether there is any inconsistency in the holdings of these cases and the decisions in the cases of Randon v. Barton and Calvin v. McFadden, supra. There is considerable confusion in the authorities as to the proper measure of damages in case of the conversion of stock of fluc-

tuating value. The early New York decisions held that the rule of highest price would apply in such cases, but later modified this rule, holding that the value should be confined to a reasonable period of time, after the owner was informed of the conversion, within which he might replace the stock. This rule was followed by the Supreme Court of the United States. Galigher v. Jones, 129 U. S. 193, 9 Sup. Ct. 335, 32 L. Ed. 658; Fletcher's Cyclopedia of Corporations, par. 3449. Other courts hold that the measure of damages is fixed at the time of conversion. This conflict was probably considered by the court in the case of Gresham v. Island City Savings Bank, supra, for the statement is made in the opinion that the holding is by a majority of the court and reference is made to a paragraph in Cook on Corporations, which discusses the various cases dealing with this question. The appellant insists that the modification of the rule in cases of conversion, as adopted by the New York courts, should also be applied in cases of breach of contract for the delivery of stock of fluctuating value, where the purchase price has been paid in advance, and insists that we express an opinion as to this matter. But if the rule is not applicable in any event to the facts of this case, as we have held, it is not necessary for us to pass on the question thus suggested, and under the circumstances we do not think it would be proper for us to do so.

[3] The evidence introduced as to the market value of the stock consisted of copies of the Fort Worth Star Telegram, reporting sales of such stock on the Fort Worth Oil Exchange. Some time prior to the trial, plaintiff's attorney had informed defendant's attorney that it was his intention to take the depositions of the officers of the Fort Worth Oil Exchange and of the Fort Worth Star Telegram, to "show the market and sale of such stock to be as published in that paper," and the defendant's attorney thereupon agreed, "subject to the competency of the evidence," to this proposition made to him by plaintiff's attorney:

"Will you not agree with me that the Fort Worth Star Telegram of the various dates between now and that time, truly reflects the market value of such stock, and avoid this deposition taking?"

We do not believe the evidence was admissible. It is certain that but for the agreement evidence of value, to be admissible, should have been confined, either to Wichita Falls, the office of the defendant and the place where the stock was to be issued, or Lubbock, if the contract can be said to impose an obligation on the defendant to deliver the stock at Lubbock. As we construe the agreement, its purpose was to obviate the necessity of showing that the reports contained in the paper truly showed the facts which they purported to state, and thus establish the market value of the stock at Fort Worth. But the agreement left open to decision the question as to whether evidence of value at Fort Worth was itself admissible as establishing the value that should control in the decision of the case. Hart v. Hart, 110 S. W. 92; Words and Phrases, vol. 2 (N. S.) p. 1316. While the question as to whether proof should be made of the value at Wichita Falls or at Lubbock is not briefed, we may say, in view of another trial, that we doubt whether the agreement imposed such an obligation on the defendant to deliver the stock at Lubbock as would make the value at that place admissible, and are inclined to think that the value should be proven at Wichita Falls. In this connection we call attention to the cases of Yeaman v. Galveston City Co., 167 S. W. 710; Turner v. Cattlemen's Trust Co. (Com. App.) 215 S. W. 831.

Reversed and remanded.

## On Motion for Rehearing.

[4] Appellee, in his motion for rehearing, lays considerable stress on the fact that the Liberty Bond had depreciated in value between the time of its delivery to the oil and gas company and its return to him, and argues that his ability to purchase the stock which the defendant had agreed to sell him was to that extent diminished, and that by these facts the case is brought within the reason of the rule announced in the case of Cavit v. McFadden, 13 Tex. 234. If the appellee had made the contract, agreeing to deliver the bond at the time of the delivery of the stock, the bond would have depreciated in his hands prior to the breach just the same as it did in the hands of the defendant; and, as we said before, when the contract was breached and the appellee accepted the return of the bond, he was in precisely the same condition he would have been in if he had never delivered the bond in the first place, and we see no reason for applying a different rule for the measure of damages in the two cases. If it be true that the value of the bond had depreciated (there was no proof of this fact except the plaintiffs' evidence, to the effect that he sold it for something less than par), the appellee could, we think, on proper allegations, recover the difference between the value of the bond and the value of the stock at the time of the breach of the contract.

[5] We adhere to the opinion that the acceptance of the return of the Liberty Bond put an end to appellee's right to sue for a specific performance of the contract or to treat the transaction as a conversion of the oil stock, appellee's remedy being thereafter a suit for damages for breach of the contract. We think the authorities cited in the original opinion sustain this conclusion. The appellee cites the case of Mutual Loan & Investment Co. v. Matthews, 176 S. W. 924, as holding

to the contrary. Appellee's attorney is mistaken in his statement of the facts of this case. The facts are that Matthews and the Mutual Loan & Investment Company owned jointly certain notes, payable to and in the possession of the said investment company. The company converted to its own use these notes, by transferring them to a third party, in payment of its indebtedness. The notes were subsequently returned to the investment company, but after the maker had become insolvent and without the collateral security which had been given to secure their payment. It was held that the return of the notes to the investment company did not preclude Matthews from suing the company for a conversion of his interest in the notes. Appellee's attorney evidently misread the case, for he states in his argument that the facts showed that the notes were returned to Matthews. We think the attorney is also mistaken in his conclusion as to the facts in the case of Early-Foster Co. v. Mid-Tex Oil Mills, 208 S. W. 224.

We should call attention to the said case of Early-Foster Co. v. Mid-Tex Oil Mills, however, as we did not have this case before us in our original consideration of the case and it should be considered in connection with what we said in the original opinion, in the discussion of the question of the measure of damages in a case of conversion. It was held in this case that where a conversion of property of fluctuating value is attended with fraud, willful wrong, or gross negligence, the measure of damages is "the highest market value of such property between the date of conversion and the filing of the suit." On motion for rehearing the measure of damages adopted by the New York court and by the Supreme Court of the United States, discussed in our original opinion, is referred to, and it is said that under such rule the judgment of the lower court could be sustained, though we take it that the court adhered to its opinion as to the correct measure of damages originally announced. If this were a case of conversion, it may be that the rule there announced would be applicable; but, as we have held that the appellee cannot treat the transaction as conversion, the authority is not applicable here.

The motion for rehearing will be overruled.